380 F.2d 468
 Carolyn M. MURRAY, an infant under 21 years, by Carrie Murray a/k/a Caroline Murray her mother and natural guardian and Carrie Murray, a/k/a Caroline Murray, individually, Plaintiffs-Appellants,
v.
The CITY OF MILFORD, CONNECTICUT, Appellee, and
Richard W. Schlachter and Dorothy Schlachter, Defendants.
 No. 375.
 Docket 30721.
 United States Court of Appeals Second Circuit.
 Argued March 15, 1967.
 Decided June 26, 1967.
 
 COPYRIGHT MATERIAL OMITTED Raymond T. Finnan, Troy, N. Y. (Stephen E. Ketcham, Rockville, Conn., on the brief), for plaintiffs-appellants.
 John C. Flanagan, New Haven, Conn., for appellee.
 Before KAUFMAN, ANDERSON and FEINBERG, Circuit Judges.
 ANDERSON, Circuit Judge:
 
 
 1
 During the evening of March 2, 1965, the plaintiff, Carolyn Murray, then nineteen years of age and a citizen of New York State, was a passenger on a motorcycle driven by one Bruce Heddon. As the motorcycle was being driven in an easterly direction on Milford Point Road, a public highway in the City of Milford, it ran into an "icy, slippery and wet portion" of the road and went out of control. The plaintiff was thrown from the vehicle and severely injured. On February 24, 1966, the plaintiff brought a diversity suit in the District of Connecticut against both the City of Milford and Richard and Dorothy Schlachter, the owners of the property abutting the highway. The City moved under Rule 12(b) to dismiss the complaint as to the City for failure to state a claim upon which relief could be granted. This motion was granted (256 F.Supp. 351), and a Rule 54(b) certificate and order were issued by the District Court which brought the matter before this court for review. The plaintiff's suit against the Schlachters is still pending.
 
 
 2
 As this is an appeal from the granting of a Rule 12(b) motion to dismiss, this court must accept plaintiff's allegations of facts as true together with such reasonable inferences as may be drawn therefrom in her favor. So regarded it appears that the "icy, slippery and wet" section of Milford Point Road was caused by the act of the Schlachters in pumping water from the cellar or basement of their house onto a portion of the highway where the contour and grade and the absence of adequate drainage facilities caused the water to remain on the highway and freeze in the cold weather instead of flowing off. The Schlachters had followed the practice of pumping water onto the highway for at least fifteen years, and the City had actual notice that they had on occasion done so in the past and had left a portion of the public highway wet but there is no allegation that the City had actual notice of the condition of the highway at the time and place of the accident.
 
 
 3
 The City's Rule 12(b) motion raises the question of the extent of a municipality's liability in tort for injuries caused by dangerous conditions existing on highways within its control. As a preliminary matter it is necessary to determine what law the courts of Connecticut apply, i. e. whether they would choose the law of Connecticut as the place of the tort or as the place of incorporation of the defendant municipality or the law of New York as the state of the domicile of the plaintiff. Klaxon Co. v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). It is clear that the Connecticut courts adhere to a strict "place of the tort" rule for determining applicable substantive law; and the governing procedural and remedial law is that of the forum. Landers v. Landers, 153 Conn. 303, 216 A.2d 183 (1966) [rejecting the "more significant relationship" approach of Restatement II, Conflict of Laws]; Chasse v. Albert, 147 Conn. 680, 683, 166 A.2d 148 (1960); Bissonnettee v. Bissonnettee, 145 Conn. 733, 142 A.2d 527 (1958); Bond v. Meredith, 17 Conn.Sup. 196 (1951). Here both the place of the tort and the forum are Connecticut and its law therefore applies to all aspects of the case.
 
 
 4
 The construction and maintenance of roads is a "governmental function," and a municipality is not liable for common law negligence in carrying out this duty. Scoville v. Town of West Hartford, 131 Conn. 239, 241, 38 A.2d 681 (1944); Riccio v. Town of Plainville, 106 Conn. 61, 63-64, 136 A. 872 (1927). It is liable, however, if it creates a "nuisance." In addition municipalities are subject to a special statutory liability under Connecticut General Stat. § 13a-149 which provides:
 
 
 5
 "Any person injured in person or property by means of a defective road or bridge may recover damages from the party bound to keep it in repair * *."
 
 
 6
 The plaintiff alleges that the City is liable in this case both for nuisance and for maintaining a "defective road" under the statute. Under each theory of liability the plaintiff alleges several elements of wrongdoing by the City, which fall into two broad categories: (1) a causal contribution to the creation of the dangerous accumulation of water and ice through the improper design and construction of the highway, such as depressions in the road, and inadequate drainage facilities and (2) the failure to remedy the dangerous condition of which it had notice or would have had notice through proper inspection, the failure to sand the road, a failure to warn and the failure to restrain the Schlachters from discharging water onto the road.
 
 NUISANCE
 
 7
 In order for a municipality to be liable in nuisance it must create the dangerous condition by some positive act; the mere failure to remedy a dangerous condition resulting from natural causes or the acts of third parties, while it may afford adequate ground for a "defective road" action under the statute, is not sufficient to support an action for nuisance. Bacon v. Town of Rocky Hill, 126 Conn. 402, 11 A.2d 399 (1940); Karnasiewicz v. City of New Britain, 131 Conn. 691, 42 A.2d 32 (1945); Jacen v. Town of East Hartford, 133 Conn. 243, 50 A.2d 61 (1946); Sheeler v. City of Waterbury, 138 Conn. 111, 82 A.2d 359 (1951).[1] Consequently, the City is not liable in nuisance for its failure to remove the water, or its failure to inspect and sand the road, or its failure to warn, or its failure to restrain the Schlachters from pumping water onto the road.
 
 
 8
 The City allegedly contributed to the creation of the dangerous condition by the improper design and construction of the highway in leaving depressions in it and in failing to provide adequate drainage facilities. Any such contribution by the City to the creation of the accumulation of ice and water is obviously rather remote. The question presented is whether the City's role was really significant enough to be a "positive act" which can support an action in nuisance. The plaintiff has not cited a single case (and research has disclosed none) in which a city's mere failure to provide adequately for drainage has resulted in its liability for personal injuries caused by ice and water on the highway.[2] To the contrary, in Pluhowsky v. City of New Haven, 151 Conn. 337, 197 A.2d 645 (1964), where a pool of water formed in the road, because melting snow did not drain properly, and caused an automobile accident, the city was held not to be liable in nuisance. The case is not directly in point because it appears that debris had clogged a catch-basin which was otherwise adequate. The court's language implies, however, that the city would not be liable in nuisance even if the annually recurring pools at that spot were caused by inadequate catch-basins. (151 Conn. at 346, 197 A.2d 645.)
 
 
 9
 In Agriesto v. Fairfield, 130 Conn. 410, 35 A.2d 15 (1943), the Connecticut Supreme Court was confronted with a factual situation very similar to the one here.[3] There the plaintiff had slipped on an ice patch which had resulted from water collecting in a depression in a sidewalk. The plaintiff brought a "defective road" action, alleging among other things, that the city was liable for "breach of its duty to construct a shoulder and to provide proper drainage facilities, in consequence of which water and ice naturally collected in depressions resulting from the flow of surface water, rendering the highway defective" (130 Conn. at 416, 35 A.2d at 17). The trial judge refused to instruct on the claimant's theory of liability, and the Supreme Court of the State approved:
 
 
 10
 "Liability depends upon the existence of a defect, not the underlying causes which produce it. * * * No liability arises `unless and until the highway has been rendered defective.' * * * The instructions requested, relating as they did to the defendant's failure to discharge its governmental duty to construct the highway properly and to physical conditions which were antecedent to the existence of the defect in question even though productive of it, were properly refused."
 
 
 11
 130 Conn. at 417, 35 A.2d at 18. This holding was reaffirmed in Scoville v. Town of West Hartford, supra. The Agriesto case is a statutory action for a "defective road" and it did not include a claim of nuisance; but if improper construction and lack of drainage facilities do not make the City responsible for a resulting pool of water in a "defective road" action, which does not require a "positive act," then such deficiencies on the part of the City would certainly not support an action for nuisance. The Agriesto decision is therefore controlling as to both the statutory and nuisance actions.
 
 
 12
 STATUTORY LIABILITY FOR "DEFECTIVE ROAD"
 
 
 13
 Not only does the authority of the Agriesto case bar the action under § 13a-149 for the alleged creation of the wet and icy condition, but the City cannot be held liable under that statute on the facts alleged in the present case because the law of Connecticut, contrary to that of most states, is that a municipality is not liable where an injury is caused by a defect in the road combined with the negligence of a third-party. The highway defect must be the sole proximate cause. Bartram v. Town of Sharon, 71 Conn. 686, 43 A. 143, 46 L.R.A. 144 (1899); Gustafson v. City of Meriden, 103 Conn. 598, 131 A. 437 (1925); Fabrizi v. Golub, 134 Conn. 89, 55 A.2d 625 (1947). 19 McQuillin, Municipal Corporations (3d ed. 1950) ¶ 54.147.
 
 
 14
 On the other hand, the City's failure to remedy the wet and icy condition of the road is just the kind of fault that usually constitutes an action under § 13a-149; but the municipality's liability under the statute is strictly limited by the requirement of prompt written notice to the city:
 
 
 15
 "[N]o action for any such injury shall be maintained against any * * * city * * * unless written notice of such injury and a general description of the same, and of the cause thereof and of the time and place of its occurrence, shall, within sixty days thereafter or, if such defect consists of snow or ice or both, within thirty days thereafter, be given * * * to the clerk of such city * * *."[4]
 
 
 16
 C.G.S. § 13a-149. The plaintiff did not file a notice of claim within either 30 or 60 days; but delayed until August 13, 1965 to file it, some five months after the accident. This failure is fatal to her action under the statute.
 
 
 17
 The plaintiff argues that a police report filed a few days after the accident fulfills this statutory requirement, but this argument has been rejected by Connecticut courts. Greene v. Ives, 25 Conn.Sup. 356, 204 A.2d 412 (1964).[5] Aside from the obvious defects that the police report does not describe the plaintiff's injuries and that it was not submitted to the clerk of the City, the purpose of the notice provision is to give the City officials an opportunity to make a timely investigation. Christain v. City of Waterbury, 123 Conn. 152, 193 A. 602 (1937); Ross v. City of New London, 3 Conn.Cir. 644, 222 A.2d 816 (1966). A police report, while possibly containing the requisite description of the accident, is not notice that a claim will be made against the city. Its legal department does not routinely investigate every accident reported by police, and the statute was clearly not meant to impose such a burden on the city.
 
 
 18
 The plaintiff contends that the notice provisions of § 13a-149 are tolled during her minority. However, that statute makes no exception for minors, and Connecticut courts do not imply such exceptions where the legislature has not specifically established them. Lametta v. Connecticut Light and Power Co., 139 Conn. 218, 92 A.2d 731 (1952). Anticipating this problem, plaintiff claims that it is "unconstitutional" for Connecticut not to toll its limitation provisions for minors.[6] This argument has long since been rejected:
 
 
 19
 "[T]he Constitution of the United States, to which appeal is made in this case, gives to minors no special rights beyond others, and it was within the legislative competency of the State of Louisiana to make exceptions in their favor or not. The exemptions from the operation of statutes of limitation, usually accorded to infants and married women, do not rest upon any general doctrine of the law that they cannot be subjected to their action, but in every instance upon express language in those statutes giving them time, after majority or after cessation of coverture, to assert their rights. No such provision is made here for such exception, but, in place of it, the legislature has made it the duty of the proper officer of the court to act for them."
 
 
 20
 Vance v. Vance, 108 U.S. 514, 521, 2 S.Ct. 854, 859, 27 L.Ed. 808 (1883). See also Williams v. United States, 133 F.Supp. 317 (E.D.Va.1954).
 
 
 21
 The plaintiff argues, finally, that her mother, who was her guardian, was unable to file timely notice as required by the statute because plaintiff's physical condition after the accident was such that she could not communicate the details of the accident to her mother. While there is some indication that Connecticut courts might extend the notice period where the disability was not discovered within the period and this was adequately alleged and proved, Mik v. City of Meriden, 106 Conn. 393, 138 A. 129 (1927), the plaintiff's allegations of disability here are insufficient. The question is not whether the plaintiff was able to communicate but whether her guardian was able to file the notice. There is no allegation that the mother could not have obtained all the necessary information for the notice without any need to consult her daughter. She could have obtained the details of the accident from the motorcycle driver, who, presumably, would know them better than plaintiff, or from the police, whose report contained diagrams and the driver's affidavit. She could have learned the details of plaintiff's injuries from hospital officials, who would know them better than the plaintiff. If the mother had received any misinformation from these sources, it would not have been fatal because § 13a-149 provides:
 
 
 22
 "No notice given under the provisions of this section shall be held invalid or insufficient by reason of an inaccuracy in describing the injury or in stating the time, place or cause of its occurrence, if it appears that there was no intention to mislead or that such * * city * * * was not in fact misled thereby."
 
 
 23
 As the plaintiff's mother could have filed the notice without communicating with her daughter, the claim of disability fails. To hold otherwise would mean that the parent of a child injured at the age of six months could wait to file notice of a claim until the child learned to talk.
 
 
 24
 The order of the District Court dismissing plaintiffs' action against the City of Milford is affirmed.
 
 
 
 Notes:
 
 
 [1]
 Earlier Connecticut cases had mentioned a proposition thatmaintenance or continuance of a nuisance was equivalent to creation of one. Sellick v. Hall, 47 Conn. 260 (1879); Morse v. Fair Haven East, 48 Conn. 220 (1880). But, as the court in Sheeler v. City of Waterbury, 138 Conn. 111, 116, 82 A.2d 359, 362 (1951) said:
 "In so far as this statement [from Morse v. Fair Haven East, supra] is applicable to a municipality which maintains a nuisance not of its own creation, it has long since been discarded as unsound."
 See also O'Connell v. Palmer, 6 Conn. Sup. 438, 439 (1938) where the court said:
 "It is not alleged that the defendant town created a nuisance, and the claim that it maintained one, or `allowed' one to exist, has no greater force than a charge of breach of statutory duty."
 
 
 [2]
 Plaintiff has cited Spitzer v. City of Waterbury, 113 Conn. 84, 154 A. 157 (1931). This and other Connecticut cases [see, e. g., Langin v. City of New Britain, 149 Conn. 431, 180 A.2d 626 (1962)] establish the proposition that a municipality may be liable for property damage to abutting owners caused by flooding where drainage facilities are inadequate to carry off ordinary rainwater
 
 
 [3]
 The only possibly significant difference is that the water inAgriesto resulted from natural causes whereas in the case here the water resulted from the act of a third party. Since this difference would, if anything, make liability more likely in the Agriesto situation, the court's holding of no liability in that case is precedent for this.
 
 
 [4]
 It has been repeatedly held that compliance with this notice provision is a "condition precedent" to recovery under the statute. Sanger v. City of Bridgeport, 124 Conn. 183, 187, 198 A. 746, 116 A.L. R. 1031 (1938); Town of Wethersfield v. National Fire Insurance Co., 145 Conn. 368, 371, 143 A.2d 454 (1958). Consequently the provision is "substantive" for purposes of Erie RR v. Tompkins, 304 U. S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and must be enforced by this court. Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)
 
 
 [5]
 There are some minor differences betweenGreene and the case here. Greene involves suit under C.G.S. § 13a-144 which parallels § 13a-149 (municipal liability) by imposing liability on the State for defective state highways. Greene deals with an inquest report rather than a police report. These distinctions, however, are without significance.
 
 
 [6]
 No specific provision of the United States or Connecticut Constitutions is cited. Plaintiff's argument, as briefed to us, seems to rest on the untenable proposition that it is somehow unconstitutional for a state court to change the common law of England