**BOARD OF TRUSTEES OF TRUCKING EMPLOYEES OF NORTH JERSEY WELFARE FUND, INC.—PENSION FUND, Plaintiff,**

v.

**William A. CANNY, et al., Defendants.**

No. 94–CV–1336.

United States District Court,
N.D. New York.

Sept. 14, 1995.

Roberto Law Firm, Philadelphia, PA (Elizabeth Roberto, of counsel), for Plaintiff.

Edward F. Crumb, Binghamton, NY (Edward F. Crumb, of counsel), for Defendants William Canny and Dorothy Conlon.

Pemberton, Briggs Law Firm, Schenectady, NY (Paul Briggs, of counsel), for Defendants Joseph Canny and Barbara Briggs.

### MEMORANDUM–DECISION AND ORDER

McAVOY, Chief Judge.

## I. INTRODUCTION

**Plaintiff Board of Trustees of Trucking Employees of North Jersey Welfare Fund ("Board of Trustees")** originally commenced this action November 30, 1993, in the District of New Jersey, but venue was transferred to the Northern District of New York on motion. In an order dated February 11, 1995, the Court dismissed plaintiff's original complaint under Fed.R.Civ.P. 12(b)(6) but granted plaintiff leave to refile. Plaintiff complied by submitting an Amended Complaint on March 21, 1995. Plaintiff seeks to recover a withdrawal liability assessment pursuant to ERISA, together with interest, statutory liquidated damages, and attorneys' fees, from **defendants William Canny, Joseph Canny, Barbara Briggs, Dorothy Conlon, Franklin Fletcher, and Joseph Fletcher ("Canny Family")**, as well as from **defendant partnership** they allegedly created **("Partnership")**.

The Board of Trustees moved for summary judgment against the Canny Family Partnership and against William Canny, Joseph Canny, Barbara Briggs, and Dorothy Conlon individually based on their failure to initiate arbitration regarding the withdrawal liability assessment pursuant to 29 U.S.C. § 1401. Defendants opposed the motion and moved separately to dismiss the Amended Complaint, or alternatively, to have the case remanded for arbitration and for a more definite statement. The Court heard oral argument on these motions on August 25, 1995. The following constitutes the Court's findings of fact and conclusions of law with respect to the issues raised.

## II. BACKGROUND

Plaintiff Board of Trustees is the sponsor of a multiemployer pension plan covering employees in the trucking industry. The plan is established and maintained pursuant to collective bargaining agreements and a Declaration of Trust between Local Union 560 and the Motor Carriers Association of North Jersey. Canny Trucking Co., ("Canny Trucking") was a corporation organized and existing under the laws of the State of New York. The company was signatory to an agreement that obliged it to make contributions to plaintiff's pension fund as a participating employer. On September 21, 1987, Canny Trucking filed a petition for bankruptcy in the Northern District Bankruptcy Court. During the course of the proceeding the company discontinued its operations, which allegedly effectuated the complete withdrawal of the company from the pension fund as defined in 29 U.S.C. § 1383(a).

Following the alleged withdrawal, plaintiff imposed a withdrawal liability assessment of $1,221,191.00 against Canny Trucking based upon 1987 figures. The assessment was to be paid in 156 monthly installments. Plaintiff alleges that notice of the liability assessment was given to Canny Trucking in proper fashion. Canny Trucking, however, failed to pay and defaulted, which resulted in the acceleration of the balance of the payments due.

Prior to April 26, 1985, each defendant subject to these motions possessed an equal ⅙ of the shares of Canny Trucking, totalling

100 percent. But on that date, defendants entered into an agreement with Canny Trucking and David Lindsey, an employee of the company, under which a portion of their shares were sold to Mr. Lindsey and the remainder were redeemed by the corporation. Following the transaction, defendants no longer were shareholders in Canny Trucking. At least until 1987, each of the defendants also possessed an equal ⅙ interest in property located at 6–18 Spring Forest Avenue in Binghamton, New York. Defendants leased the property to Canny Trucking from 1975 to at least 1987, and Canny Trucking used the property as its general offices, main trucking terminal, and garage facilities.

Plaintiff now brings suit in this Court seeking to recover the withdrawal liability assessment from defendants. Plaintiff's Amended Complaint alleges that the joint ownership and leasing of the subject real property by defendants constitutes a real estate leasing proprietorship or de facto partnership. It also alleges that this leasing enterprise was a "trade or business" under common ownership and control with Canny Trucking, thereby triggering the "controlled group" provisions of ERISA with respect to payment of withdrawal liability assessments.

## III. DISCUSSION

■ The Employee Retirement Income Security Act ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act ("MPPAA"), provides an elaborate system to ensure the financial integrity of multiemployer pension funds. Congress passed MPPAA in part because employers' withdrawals from multiemployer pension plans threatened those plans' solvency, and thus their ability to pay beneficiaries as their benefits came due. *Joyce v. Clyde Sandoz Masonry*, 871 F.2d 1119, 1120 (D.C.Cir.), *cert. denied*, 493 U.S. 918, 110 S.Ct. 280, 107 L.Ed.2d 260 (1989).

The MPPAA requires employers who cease contributing to a multiemployer pension fund to pay what the statute refers to as "withdrawal liability," a sum that represents a portion of the fund's "unfunded vested benefits." 29 U.S.C. §§ 1381, 1399. Liability is based upon the employer's date of "complete withdrawal" from a multiemployer plan. Special provisions of the Act define the complete withdrawal of employers.

■ Pension plan sponsors are granted broad authority by MPPAA to assess and collect withdrawal liability. Provisions for the quick and informal resolution of withdrawal liability disputes are an integral part of MPPAA's statutory scheme. The Act first requires the plan sponsor to decide, on its own, whether a withdrawal by an employer has occurred. 29 U.S.C. § 1382(1). *See also Flying Tiger Line v. Teamsters Pension Trust Fund*, 830 F.2d 1241, 1244 (3d Cir. 1987). Then the sponsor must notify the putative employer, after the employer's withdrawal, of the amount of the employer's alleged withdrawal liability and of the schedule for liability payments established by the fund. 29 U.S.C. § 1399(b)(1). Finally, the fund must demand payment from the employer in accordance with the schedule.

■ After receiving notice of a liability assessment, the putative employer may within 90 days ask the fund sponsor to reconsider the computed alleged liability. 29 U.S.C. § 1399(b)(1)(B). If a dispute remains thereafter, either party may initiate arbitration proceedings within a statutorily prescribed period ranging from 60–180 days.[1] 29 U.S.C. § 1401(a)(1). If no arbitration has been initiated by either party within the time required, the amounts demanded become "due and owing on the schedule set forth by the plan sponsor" and subject to a collection suit in state or federal court by the sponsor. 29

---

1. The parties apparently are under the impression that defendants had 90 days from notice of the withdrawal liability assessment during which they could initiate arbitration. The Court's reading of the statute is that 29 U.S.C. § 1401(a)(1) provides for three situations: (1) if the employer requests reconsideration of the liability assessment and the plan sponsor responds within 120 days, the employer has 60 days from the *response;* (2) if the employer requests reconsideration and the sponsor does not respond within 120 days, the employer has 180 days (120 plus 60) from the *request for reconsideration;* and (3) if the employer never requests reconsideration, the employer has 90 days from its first notice of the liability assessment. *See Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 263 (2d Cir.1990).

U.S.C. § 1401(b)(1). Regardless of the course of action pursued by the employer, the employer must begin making interim payments of the withdrawal liability in accordance with the sponsor's schedule within 60 days of notice of liability. 29 U.S.C. § 1401(b)(2). In other words, MPPAA contemplates a "pay-first-question-later" procedure to ensure the continuing viability of the relevant pension fund. *ILGWU Nat'l Ret. Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 882 (2d Cir.1988).

ERISA requires that all trades or businesses—whether or not incorporated—that are under "common control," as defined in regulations issued by the Pension Benefit Guaranty Corporation ("PBGC"), "shall be treated ... as a single employer." 29 U.S.C. § 1301(b)(1). Because a commonly controlled group of trades or businesses is to be treated as a single employer, each member of such a group is liable for the withdrawal of any other member of the group. In determining whether a withdrawal has occurred, MPPAA explicitly provides that any transaction designed to "evade or avoid" withdrawal liability should be ignored. 29 U.S.C. § 1392(c).

## A. RULE 12(b)(6) MOTION BY DEFENDANTS

Defendants move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the Amended Complaint, contending that it fails to state a viable cause of action for imposing liability on defendants under ERISA and the MPPAA. More specifically, defendants argue that the Amended Complaint fails to allege sufficiently that defendants controlled Canny Trucking during the period of the company's withdrawal from the multiemployer plan. On the alternative theory that defendants sold their stock in Canny Trucking in an attempt to evade or avoid withdrawal liability, defendants further argue that the Amended Complaint fails to allege sufficiently that defendants acted in an attempt to evade ERISA liability.

■ On a motion to dismiss, the facts alleged by plaintiff are assumed to be true and must be liberally construed in the light most favorable to plaintiff. *Easton v. Sundram*, 947 F.2d 1011, 1014 (2d Cir.1991), *cert.*

*denied*, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). While the Court need not accept mere conclusions of law, the Court should accept the pleader's description of what happened along with any conclusions that can reasonably be drawn therefrom. *Murray v. City of Milford*, 380 F.2d 468, 470 (2d Cir.1967). The Court's inquiry on this Rule 12(b)(6) motion is, therefore, merely directed to whether plaintiff's allegations constitute a statement of claim under Fed. R.Civ.P. 8(a), which calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." In sum, a complaint should not be dismissed for failure to state a claim unless it appears, beyond doubt, that the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Dahlberg v. Becker*, 748 F.2d 85, 88 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985); *Wanamaker v. Columbian Rope Co.*, 740 F.Supp. 127, 133 (N.D.N.Y.1990).

■ With the applicable standards thus established, the Court addresses the Amended Complaint. Notwithstanding the Court's analysis in its February 11, 1995, order dismissing plaintiff's first Complaint, upon further consideration of the intricacies of ERISA and MPPAA, the Court disagrees with defendants' assessment of deficiencies on the face of the Amended Complaint. The Court believes that all parties in this action, plaintiff and defendants, have expended considerable time and energy disputing questions that are not directly relevant to the determinative issues. In order for plaintiff to state a viable cause of action against defendants, it is not imperative that the Amended Complaint demonstrate that defendants controlled Canny Trucking during the period of the company's withdrawal from the multiemployer plan. Nor is it imperative, as defendants persistently have contended, that the Amended Complaint demonstrate that defendants were attempting to evade or avoid withdrawal liability, rendering the stock transaction moot.

■ In order to state a viable cause of action pursuant to MPPAA, the Amended Complaint need only sufficiently allege one set of facts: that defendants' leasing enterprise, at some point prior to the withdrawal, qualified as an "employer" under the MPPAA such that they were required, once notified of withdrawal liability, to arbitrate any challenges to the liability. *See Bowers v. Transportacion Maritima Mexicana, S.A.,* 901 F.2d 258, 261 (2d Cir.1990); *Teamsters Pension Trust Fund v. Brigadier Leasing Assocs.,* 880 F.Supp. 388, 393 (E.D.Pa.1995). Once such a set of facts is established, the Court potentially can grant plaintiff some form of relief, either by sending the case to arbitration or deciding the case itself.

■ In gleaning the true cause of action from plaintiff's Amended Complaint, the Court carefully distinguishes between issues that fall within the jurisdiction of an arbitrator and those that properly are before the Court. Despite the broad language of MPPAA, arbitration may be bypassed in rare cases, such as where questions of statutory interpretation arising outside the specific statutory sections of the MPPAA are concerned. The law is clear, however, that where there is any factual dispute, the "exhaustion of administrative remedies" doctrine is implicated and arbitration of that dispute is required. *Teamsters Pension Conf. & Retirement Fund v. McNicholas Transp. Co.,* 658 F.Supp. 1469, 1472 (N.D.N.Y.1987), *aff'd,* 848 F.2d 20 (2d Cir.1988); *Flying Tiger,* 830 F.2d at 1253–55. *See also Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938) (regarding the exhaustion doctrine).

■ Defendants are completely correct in their assertion that MPPAA does not preclude judicial resolution of the threshold legal issue of whether defendants constituted an "employer" within the meaning of the Act. Like the court in *Flying Tiger,* however, the Court notes the difference between the statutory issue of whether defendants were *ever* a MPPAA employer and the factual issue of whether defendants had *ceased* to be an MPPAA employer before the date of withdrawal. The former is a question for the Court to decide in this case, while the latter

is relegated to an arbitrator's jurisdiction. *Flying Tiger,* 830 F.2d at 1250; *Brigadier Leasing,* 880 F.Supp. at 393. Along the same lines, the factual issue of whether defendants undertook their stock transaction with the intent to "evade or avoid" withdrawal liability is also one for an arbitrator to resolve. *Banner Indus. v. Central States Pension Fund,* 875 F.2d 1285, 1288 (7th Cir.), *cert. denied,* 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989); *Flying Tiger,* 830 F.2d at 1248.

■ Examining the Amended Complaint in a light most favorable to plaintiff, the Court finds that the requirements of Fed. R.Civ.P. 8(a) are satisfied. Plaintiff attempts to impose liability on defendants not by alleging that they were controlling shareholders of Canny Trucking at the time of its withdrawal, but rather by alleging that they were controlling shareholders at some point prior to the withdrawal. Unfortunately, in an apparent attempt to cover all the bases, plaintiff digresses into extended discussions of defendants' alleged attempt to "evade or avoid" liability and defendants' alleged effective control of Canny Trucking. Yet under it all, plaintiff actually has provided "a short and plain statement of the claim showing that the pleader is entitled to relief." Under the standard set forth in *Murray,* 380 F.2d at 470, the Court finds that the Amended Complaint is sufficient on its face. It alleges that defendants' leasing enterprise constituted an "employer" at some point prior to the withdrawal such that defendants, once they received notice of withdrawal liability, were required to arbitrate any challenges to that liability.

On this issue, plaintiff properly alleges "common control" for the purpose of imposing MPPAA liability. The PBGC regulations promulgated under 29 U.S.C. § 1301(b) incorporate Internal Revenue Code § 414(c) for determinations of "controlled group" status. Under the Internal Revenue Code regulations, a "brother-sister group of trades or businesses under common control" exist if the same five or fewer persons own a controlling interest (80%) in each business and, considering only the identical ownership in each entity, the relevant persons are also in

effective control (50% interest). 26 C.F.R. § 1.414(c)–2. Assuming plaintiff's allegations are true, the leasing enterprise was under common control with Canny Trucking prior to April, 1985. When the stock of the Rita Fletcher estate is eliminated to confine the analysis to the same five or fewer persons, § 1.414(c)–2 is satisfied with 83.5 percent common ownership.

Assuming the facts alleged by plaintiff to be true, the leasing enterprise—and by extension, defendants themselves—would have been liable for the withdrawal liability assessment if Canny Trucking's withdrawal had occurred before April, 1985, when defendants divested themselves of their stock in the company. Taking the Amended Complaint as fact, Canny Trucking and the leasing enterprise were the same entity in the eyes of the law prior to the stock transaction. The Court reiterates that ERISA requires that all trades or businesses that are under common control shall be treated as a single employer. 29 U.S.C. § 1301(b)(1).

The Court now considers the final requirement for plaintiff's cause of action—notice on the part of defendants of the withdrawal assessment liability. Once an entity is determined to be an MPPAA "employer," the pension plan sponsor must notify the employer of its alleged withdrawal liability in accordance with MPPAA before the Act's arbitration mechanism is activated. Plaintiff alleges that defendants received notice of the assessment through various methods, including mailings to Canny Trucking, the proof of claim filed in the bankruptcy case, and service of the original Complaint. Assuming the Amended Complaint to be true, plaintiff has satisfied its burden.

On the issue of notice, the Court believes the parties once again have expended considerable energy debating irrelevant factual issues, such as whether Canny Trucking ever received the letters demanding payment allegedly sent by plaintiff. All that is required is actual notice by defendants, and by statute such notice must contain only the amount of the assessment, the schedule of payments, and the demand for payment. 29 U.S.C. § 1399(b)(1). In this Circuit, receipt of a complaint containing such information has been held to constitute sufficient notice to trigger the arbitration requirement. *Bowers*, 901 F.2d at 263. Paragraph 23 and the ad damnum clause of plaintiff's original Complaint would satisfy *Bowers*.

Plaintiff has sufficiently alleged that defendants constituted an "employer" under the MPPAA at some point prior to the employer's withdrawal from a multiemployer pension plan; plaintiff also has sufficiently alleged that defendants received notice of a withdrawal liability assessment against their interests. Assuming the facts alleged to be true, plaintiff has established that this action is subject to the jurisdiction of an arbitrator to decide factual issues, such as whether defendants ceased to be an MPPAA employer prior to the withdrawal. Accordingly, the Amended Complaint does in fact state a cause of action, and defendants' motion to dismiss may be denied.

## B. SUMMARY JUDGMENT MOTION BY PLAINTIFF

Rule 56(c) provides that the Court may grant summary judgment where there are no genuine issues of material fact for trial. Fed.R.Civ.P. 56(c). If no genuine issues exist, the movant is entitled to judgment as a matter of law. When the movant meets this standard, the opposing party must present sufficient facts to demonstrate that some genuine issue of material fact exists in order to defeat the movant's motion for summary judgment. An issue is *genuine* if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In deciding the motion, the Court must view the evidence in the light most favorable to the party opposing the motion. *See Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1187 (2d Cir.1987).

When the opposing party bears the ultimate burden of proof on a particular issue, such party may defeat a properly supported summary judgment motion by producing specific facts that demonstrate a genuine issue of material fact on that issue. *See Montana v. First Fed. Sav. and Loan Ass'n,*

869 F.2d 100, 103 (2d Cir.1989); *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990). Here, defendants bear the ultimate burden of proof, because of MPPAA's "pay-first-question-later" system. *See Bowers,* 901 F.2d at 263. If defendants never establish that they fall within a statutory "safe haven" they will be liable. *See Concrete Pipe and Prods., Inc. v. Construction Laborer's Pension Trust,* —— U.S. ——, ——, 113 S.Ct. 2264, 2278, 124 L.Ed.2d 539 (1993); *Flying Tiger,* 830 F.2d at 1250.

▮ Plaintiff's claim against defendants is based on MPPAA, whose relevant law the Court has already stated. In order to sustain its claim for purposes of summary judgment, plaintiff must establish three elements: (1) that defendants constituted an "employer" under MPPAA prior to the withdrawal; (2) that defendants received notice of a withdrawal liability assessment against them; and (3) that defendants failed to initiate arbitration as required by MPPAA. The Court has already addressed the first two prongs of this test to some extent in discussing defendants motion to dismiss, and the Court will now complete the analysis.

▮ Plaintiff has satisfied its burden regarding whether defendants constituted an MPPAA "employer" prior to the withdrawal. First, it is undisputed that William Canny, Joseph Canny, Barbara Briggs, Dorothy Conlon, and Mary Louise Hacker each owned shares of stock representing an approximate ⅕ interest in Canny Trucking prior to April 26, 1985. It is also undisputed that the same five persons each owned a ⅕ interest in property located at 6–18 Spring Forest Avenue in Binghamton, New York until at least December, 1987. Finally, it is undisputed that the same five persons leased the property at 6–18 Spring Forest Avenue to Canny Trucking from 1985 through at least 1987.

▮ Second, plaintiff has established that defendants' leasing enterprise qualifies as a "trade or business" pursuant to MPPAA and more specifically, to the Internal Revenue Code regulations regarding "common control." The leasing of real property has been held to constitute a trade or business. *E.g., Trustees of Amalgamated Ins. Fund v. Saltz,*

760 F.Supp. 55, 58 (S.D.N.Y.1991). In sum, the Court will adhere to the maxim that, when determining whether an activity should be considered a trade or business, "ERISA should be construed liberally to provide the maximum amount of protection to workers covered by pension plans." *Id.* Defendants consistently held their leasing enterprise out to be a partnership, such as in their tax returns, and they cannot now seek protection from having the operation described as a "trade or business." Moreover, since the business was not incorporated, plaintiff is correct in asserting that defendants are personally liable for any debts of the business.

Third, as the Court stated earlier, plaintiff has established that the Canny Family Partnership—and by extension, defendants themselves—would have been liable for the withdrawal liability assessment if Canny Trucking's withdrawal had occurred before April, 1985, when defendants divested themselves of their stock in the company. Pursuant to 26 C.F.R. § 1–414(c)–2 and 29 U.S.C. § 1301(b)(1), Canny Trucking and the leasing business were the same entity in the eyes of the law prior to defendants' stock transaction. Because Canny Trucking was, without doubt, an MPPAA "employer," plaintiff has established that defendants, through the leasing business, were also an MPPAA "employer" prior to the withdrawal of Canny Trucking from the pension fund.

The Court has already explained, in discussing the previous motion, that plaintiff has satisfied its burden regarding the issue of whether defendants received proper notice of the withdrawal liability assessment asserted against them by plaintiff. Again, the original Complaint, indisputably served on all individual defendants, is proper in form and substance as notice of the assessment under MPPAA and *Bowers,* 901 F.2d at 263. The Complaint, even without its exhibits, contained everything required for notice by statute. 29 U.S.C. § 1399(b)(1). Therefore, based on the first two prongs of the MPPAA test at issue, plaintiff has established that this action is subject to the arbitration requirements of 29 U.S.C. § 1401(a).

▮ The Court now turns to the final prong of the test, whether defendants initi-

ated arbitration within the period prescribed by the Act. MPPAA requires that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title *shall* be resolved through arbitration." 29 U.S.C. 1401(a)(1) (emphasis added). In enacting MPPAA, Congress manifested an unequivocal preference for the initial resolution by private arbitrators of disputes between plan sponsors and employers concerning the imposition and amount of withdrawal liability. *McNicholas Transp. Co.,* 658 F.Supp. at 1472. As previously stated, a district court only has jurisdiction in the first instance to resolve issues of statutory construction. All factual disputes, such as whether defendants remained an "employer" at the time of the withdrawal, are reserved for an arbitrator because of the "exhaustion of administrative remedies" doctrine. *Id.; Flying Tiger,* 830 F.2d at 1253–55.

Plaintiff has satisfied its burden under Fed.R.Civ.P. 56 that defendants did not initiate arbitration in a timely fashion. When a defendant receives his initial notice of a withdrawal liability assessment in the form of a complaint and does not request a reconsideration by the plan sponsor, as is the case here, the defendant has 90 days to initiate arbitration. *Bowers,* 901 F.2d at 263.[2] It is undisputed that defendants here each were personally served with a copy of the original Complaint between April 1 and April 7, 1994. Because the Complaint was sufficient notice without its exhibits, the Court finds that defendants were required by the MPPAA to initiate arbitration by July 7, 1994, at the latest. Defendants admit, however, that they made no mention of arbitration prior to requesting it in affidavits served on September 16, 1994.

Finally, defendants have not made any payments to date on the withdrawal liability assessed by plaintiff. They have not done so despite MPPAA's explicit requirement that, regardless of the course of action

pursued by an employer, the employer must begin making interim payments of the withdrawal liability in accordance with the sponsor's schedule within 60 days of notice of liability. 29 U.S.C. § 1401(b)(2). Consequently, notwithstanding any request for arbitration made by defendants, plaintiff has established that defendants currently are in "default" within the meaning of 29 U.S.C. § 1399(c)(5).[3] The entire amount of the assessed withdrawal liability would consequently be due and owing for a second reason, in addition to defendants' failure to timely initiate arbitration. *McNicholas Transp. Co.,* 658 F.Supp. at 1476.

The Court has determined that plaintiff has satisfied its burden as to all three prongs of the MPPAA test and as to Fed.R.Civ.P. 56. The Court now turns to defendants' arguments to determine whether defendants have presented sufficient facts to demonstrate that some genuine issue of material fact still exists in order to defeat plaintiff's motion for summary judgment.

Several of defendants' arguments can be quickly disposed of for reasons previously stated—they simply are not relevant to the three prongs of MPPAA test to which plaintiff is subject. First, defendants argue that a genuine issue of fact exists as to whether Canny Trucking ever actually received notice of withdrawal liability from plaintiff. The Court responds by reiterating that defendants' leasing enterprise, and defendants themselves, should be considered as one entity with Canny Trucking for purposes of the MPPAA. Defendants are the "employer" at issue here, and they have received notice of the withdrawal liability. It is irrelevant whether a Notice and Demand ever arrived at the offices of Canny Trucking.

Second, defendants argue once again that there was no "controlled group" or "effective control" on the purported date of withdrawal, nor did defendants seek to "evade or avoid" withdrawal liability. As the Court discussed before, these issues are irrelevant for our

---

**2.** *See also supra* note 1.

**3.** Section 1399(c)(5)(A) arguably requires the plan sponsor to make a second demand for payment from the employer before the employer is

considered in default. If such a second demand is required in this case, however, the Amended Complaint would satisfy the statute.

**594**

purposes. After the Court determines that defendants were part of a "controlled group" at some point prior to the withdrawal, the inquiry is complete. Whether the "controlled group" continued until the date of withdrawal and whether defendants tried to "evade or avoid" would have been factual matters for an arbitrator, had arbitration been initiated. The Court does not rule on the merits of such claims at all. Third, defendants argue that a genuine issue of fact exists with respect to whether a "withdrawal" by Canny Trucking ever occurred. Once more, such an argument does not address the three prongs of the MPPAA test. Whether Canny Trucking actually withdrew is a factual issue that should have been arbitrated.

■ With those questions eliminated, the Court now turns to issues raised by defendants that have not previously been addressed. Defendants argue that a genuine factual dispute exists whether plaintiff has ever made any "determinations" to be arbitrated as required by statute. See 29 U.S.C. 1401(a)(1). The Court responds initially by noting that this argument does not address the three prongs of the MPPAA test and is a factual issue for an arbitrator. Notwithstanding that fact, defendants too narrowly define the term "determination." Based on the Court's reading of MPPAA, review in arbitration is for all factual matters relating to a determination *of liability,* not relating to each and every determination leading up to an ultimate determination of liability. Plaintiff clearly has made a determination of liability.

MPPAA is clear regarding the content of the notice given to defendants in a withdrawal liability situation, and as the Court has previously stated, plaintiff's notice satisfied the statute. 29 U.S.C. § 1399(b)(1). At no point does the MPPAA require more specific determinations in writing, as defendants apparently argue. According to the Supreme Court, the plan sponsor acts only in an enforcement capacity. The notice requirements of 29 U.S.C. § 1399(b)(1) "bear the hallmarks of an assessment, not an adjudication." *Concrete Pipe,* —— U.S. at ——, 113 S.Ct. at 2278. Because the sponsor is not required to adjudicate disputes, examine wit-

nesses, or even "hold a hearing," it certainly is not required to put more in writing than the statute requires. *Id.*

Defendants' final arguments relate to the statute of limitations and to whether the arbitration requirement was stayed pending determination of defendants' motion to dismiss. First, to counter plaintiff's claim that service of the original Complaint upon defendants should constitute sufficient notice, defendants argue that service of the Complaint took place after the time limit set forth in 29 U.S.C. § 1451(f). That section dictates that a civil action to collect a withdrawal liability assessment, in the absence of claims of fraud, must be brought within six years after the date on which the cause of action arose. Defendants argue that the deadline should be six years from the date of the alleged withdrawal by the employer, or sometime prior to December 31, 1993.

■ Defendants' analysis of the law on this issue is misguided. In withdrawal liability cases, the cause of action does not arise on the date of withdrawal by the employer. Rather, it arises on the date the employer fails to make a withdrawal liability payment as demanded by the plan sponsor. *Joyce,* 871 F.2d at 1121–22. By necessity, therefore, the statutory notice of withdrawal liability given to the employer by the plan sponsor can never be time-barred under 29 U.S.C. § 1451(f). Because defendants did not fail to make their first payment until 60 days after their initial notice of the assessment, in June, 1994, § 1451(f) actually does not come into play until June of the year 2000.

■ The Court realizes that defendants arguably could raise a claim of laches based on 29 U.S.C. § 1399(b)(1), which provides that a plan sponsor must notify the employer of the assessment "[a]s soon as practicable" after the employer's withdrawal. However, defendants have not raised the issue. Were it relevant, the Court finds that a laches argument would not be successful, even if plaintiff could have notified defendants prior to the original Complaint. In light of "the complexity of the tasks imposed on the [plan sponsor] under the statute and Congress' clear intent to *help* plans collect

withdrawal liability," a six-year delay is not so unreasonable as to support a defense of laches. *See Levy Bros. Frocks,* 846 F.2d at 879 (emphasis in original).[4] Furthermore, no prejudice to defendants resulted from the delay in notice. No interest accrued on the liability until defendants received the notice. *See Brentwood Fin. Corp. v. Western Conf. of Teamsters Pension Trust Fund,* 902 F.2d 1456, 1460 (9th Cir.1990).

Defendants also urge that given the time defendants were waiting for the Court to determine their motion to dismiss, the MPPAA arbitration time limit should have been tolled such that their request for arbitration was timely. The relevant MPPAA sections contain no tolling provision, but the time limit is in fact subject to equitable tolling. *Bowers,* 901 F.2d at 264. The equitable tolling doctrine calls for the court to extend the statute of limitations beyond the time of expiration. *Id.* But in order to warrant equitable tolling, the employer in a withdrawal liability case must move decisively to present the issue in court within the statutory time period for arbitration. The employer can accomplish this task in several ways, such as by seeking a declaratory judgment that it is not really an MPPAA "employer" at all. *See Flying Tiger,* 830 F.2d at 1249. Even when the plan sponsor is the first to file suit, the arbitration time limit will be tolled if the employer raises the arbitration issue immediately and moves for a stay of arbitration. The employer must not, however, wait until the fund files a collection against it, "and then for the first time [try] to assert its defenses in court when it should have proceeded in arbitration." *Bowers,* 901 F.2d at 264. Because they have rested on their rights in such a manner here, the Court finds that defendants are not entitled to equitable tolling.

4. *Levy Bros. Frocks* permitted a two-year delay, but considering Congress' intent and the fact that the *statute of limitations is six years,* the Court finds that a period such as the one at issue here also is reasonable.

5. MPPAA *requires* the recovery of interest on the unpaid withdrawal liability assessment at the rate provided for under the pension plan, if any.

Plaintiff has met its burden under Fed. R.Civ.P. 56 by demonstrating that no genuine issue of material fact exists in this case. Defendants were an "employer" under the MPPAA, they were notified of a withdrawal liability assessment against their interests, and they failed to pay interim installments and initiate arbitration within the time required. Defendants should have sought arbitration immediately, or at least moved immediately for a stay of arbitration. The result may seem harsh, but the harshness of the default is largely "a self-inflicted wound." *Levy Bros. Frocks,* 846 F.2d at 887.

### C. MOTION TO REMAND AND RULE 12(e) & (f) MOTION

Because the Court will grant plaintiff's motion for summary judgment, the Court finds that defendants' motions (1) to remand this matter for arbitration and to stay the proceedings until arbitration is complete and (2) for a more definitive statement and to strike pursuant to Fed.R.Civ.P. 12 are denied as moot.

### IV. CONCLUSION

For all the foregoing reasons defendants' motion to dismiss is denied, and summary judgment is granted in its entirety in favor of plaintiff and against defendants. Pursuant to 29 U.S.C. §§ 1401(b)(1) and 1132(g)(2), plaintiff Board of Trustees of Trucking Employees of North Jersey Welfare Fund is awarded a final judgment against the Canny Family Partnership and against defendants William Canny, Joseph Canny, Barbara Briggs, and Dorothy Conlon jointly and severally, in the principal amount of a withdrawal liability assessment of $1,221,191.00; accrued interest on the unpaid principal from and after June 7, 1994, through August 25, 1995, of $148,549.00;[5] statutory liquidated damages of $244,238.00;[6] and reasonable at-

29 U.S.C. § 1132(g)(2)(B). Here, the plan permits interest at 10 percent per annum.

6. MPPAA also requires the recovery of an amount equal to the greater of the interest on the unpaid assessment or any liquidated damages provided for under the pension plan up to 20 percent of the assessment. 29 U.S.C. § 1132(g)(2)(C). Here the plan permits the full 20 percent.

torneys' fees and costs.[7]  The relief sought by plaintiff is hereby GRANTED.

**IT IS SO ORDERED.**

---

7.  Finally, MPPAA requires the recovery of attorneys' fees.  29 U.S.C. § 1132(g)(2)(D).