**Francis HOGAN and Daniel Masucci, Plaintiffs,**

v.

**DC COMICS; Warner Communications, Inc.; Time Warner Entertainment Co., L.P.; Nancy Collins; and Paul Lee, Defendants.**

No. 96–CV–1749.

United States District Court, N.D. New York.

Sept. 2, 1997.

elapsed, whether he signed the waiver form on     the day of the interview.

Bond, Schoeneck & King (Deborah Karalunas, Of Counsel), Syracuse, NY, for Defendants.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

### I. BACKGROUND

This case is essentially an action for copyright infringement. Plaintiffs Hogan and Masucci are the authors of a comic entitled *"Matchsticks."* The defendants are DC Comics, its corporate owners/joint venturers, and the two authors of an allegedly infringing comic. The two-count Complaint seeks to hold Defendants liable for copyright infringement and for common law misappropriation.

Hogan and Masucci began writing *Matchsticks* in 1993. In August 1994, Hogan submitted a draft of three issues of *Matchsticks* (Plaintiffs hoped to create a total of nine issues in the *Matchsticks* series) and promotional materials to DC Comics ("DC"). DC notified Plaintiffs that they were not interested in publishing *Matchsticks,* although they would keep the manuscript on file. In September 1996, Masucci and Hogan discovered that DC was advertising a forthcoming comic book entitled *"Dhampire: Stillborn"* (*"Dhampire"*) about a half-human, half-vampire protagonist named Nicholas Gaunt. In October, 1996, Plaintiffs registered Matchsticks with the Copyright Office and in November, 1996, filed the instant Complaint.

On February 28, 1997, in a decision read from the bench, this Court granted in part Defendants' motion to dismiss, dismissing Plaintiffs' state law cause of action only. Presently before the Court is Defendants' Motion for Reconsideration of this Court's decision not to dismiss Plaintiffs' copyright infringement claim.

### II. DISCUSSION

Reconsideration of a prior decision is discretionary, and the factors that generally compel reconsideration are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear

Duker Barrett Gravante & Markel (George Carpinello, of Counsel), Albany, NY, for Plaintiffs.

Fross Zelnick Lehrman & Zissu, P.C., New York, NY (Carol F. Simkin, of Counsel),

error or prevent manifest injustice." *Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992). Naturally, a Court is disinclined to reconsider a prior decision unless a party has satisfied one of these three factors.

Here, Defendants argue that reconsideration is necessary to correct a clear error of law. Specifically, Defendants argue that it was incorrect for the Court to limit its consideration to the facts asserted on the face of the Complaint rather than examining the copies of *Matchsticks* and *Dhampire* attached to Defendants' motion, which was referred to in Plaintiffs' Complaint.

■ After considering Defendants' arguments, the Court concludes that it was incorrect for the Court to refuse to evaluate the underlying works referenced in Plaintiffs' Complaint. As the Second Circuit has stated in an analogous context:

> We ... decline to close our eyes to the contents of the prospectus and to create a rule permitting a plaintiff to evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach the prospectus to the complaint or to incorporate it by reference.

*I. Meyer Pincus & Associates, P.C. v. Oppenheimer & Co., Inc.* 936 F.2d 759, 762 (2d Cir.1991) (*citing Field v. Trump*, 850 F.2d 938, 949 (2d Cir.1988), *Furman v. Cirrito*, 828 F.2d 898, 900 (2d Cir.1987), and 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1327, at 489 & n. 15 (when "plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading")).

Accordingly, the Court grants Defendants' request for reconsideration and will examine *Matchsticks* and *Dhampire* to determine if Plaintiffs have sufficiently stated a claim for copyright infringement.

### A. Motion To Dismiss

■ Federal Rule of Civil Procedure 12(b)(6) provides that a cause of action shall be dismissed if the complaint fails "to state a claim upon which relief can be granted." In analyzing a motion to dismiss, the facts alleged by the plaintiff are assumed to be true and must be liberally construed in the light most favorable to the plaintiff. *See, e.g. Easton v. Sundram*, 947 F.2d 1011, 1014–15 (2d Cir.1991). While a court need not accept mere conclusions of law, a court should accept the pleader's description of what happened along with any conclusions that can reasonably be drawn therefrom. *See Murray v. City of Milford*, 380 F.2d 468 (2d Cir.1967).

For purposes of the present motion, the Court has examined *Matchsticks* and *Dhampire*. The following is a highly abridged summary of the works.

*Matchsticks* is a story with multiple story lines, the primary story concerns a young man named Nicholas Gaunt who is hunted by warring factions. The story takes place in 2017 and chronicles the interaction of three competing groups. Gaunt, a martial arts master, is not aligned with any of the aforementioned groups. Throughout the story, a number of characters attempt to kill Gaunt.

The main story in *Matchsticks* is a series of fights between Gaunt and those who are trying to kill him. At the end of the story, Gaunt is captured and discovers that his enemy Fenris is the one who killed Gaunt's mother and uncle. Fenris calls Gaunt his "son" and explains: "I was once as your are now, human. I rose, resurrected, as something more than human and yet something less than a man, darker." Fenris offers Gaunt immortality but Gaunt escapes and beheads Fenris.

After Gaunt kills Fenris, Maxwell Niphe, the head of another faction, appears. After a brief but fruitless struggle by Gaunt, Niphe proposes to Gaunt that he join his group stating: "If you still wish for death then you can seek it by hunting vampires, renegade vampires." Thus ends the Court's copy of *Matchsticks*.[1]

---

1. Plaintiffs assert in their opposition papers that the manuscript they sent to DC Comics had more, but the only "more" they point to is that in their version Gaunt apparently chooses to join Niphe's group.

Defendants' work is called *Dhampire: Stillborn. Dhampire* is a story about a troubled youth haunted by mysterious childhood memories who subsequently discovers that he is half-human, half-vampire. The protagonist's name is also Nicholas Gaunt, who incidentally was a stillborn baby who lived. In his search for his identity Gaunt discovers that the person he believed was his sister is actually his mother.

Gaunt confronts his mother who tells Gaunt that a vampire schooled her in the "art of dark love," and gave her "blood kisses." Because his mother was bitten by a vampire while she was pregnant, this caused Gaunt to become a "dhampire." Although Gaunt apparently wishes to become a full vampire, the only way he can become a full vampire is to commit hideous crimes and suffer a violent death. Gaunt commits the crimes and is killed. He then rises from the dead as a vampire and is greeted by his mother who tells him it is time for him to meet his "sire."

### B. Copyright Infringement

■ In order to prove copyright infringement "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc., v. Rural Tel., Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991) (*citing Harper & Row, Publishers, Inc., v. Nation Enterprises,* 471 U.S. 539, 548, 105 S.Ct. 2218, 2224, 85 L.Ed.2d 588 (1985)). Under the first element, Plaintiffs assert in their Complaint that they are the sole owners of all rights and interests in the copyright of *Matchsticks,* and that they have applied for copyright registration. (Complaint ¶¶ 14 & 15). Thus, Plaintiffs have sufficiently pled this element of their infringement claim.

■ As to the second element, Plaintiffs must prove that these defendants "copied" their protected expression. In order to find copying a court must resolve two distinct issues. First, there is the question of whether the defendant used the plaintiff's material in creating the infringing work. This use might entail actual photocopying, use as a model, use as a template, or even use as inspiration. However, resolution of this issue does not necessarily mean that such use will result in liability.

■ The second part of the determination asks whether a defendant has copied a sufficient amount of plaintiff's work such that the two works are "substantially similar" and thus the defendant should be liable for the misappropriation. Both species of copying are necessary for a plaintiff to prevail. *See, e.g., Stillman v. Leo Burnett Co., Inc.* 720 F.Supp. 1353, 1357 (N.D.Ill.1989) ("a defendant who has copied from a plaintiff's work as a factual matter ... may not have copied as a legal matter"). For example, even when two works are substantially similar, even identical, if the defendant did not copy as a factual matter but instead independently created the work at issue, then infringement has not occurred.

■ Turning to whether Defendants *used* Plaintiffs' material in creating their work, the Court notes that it is generally not possible to establish actual copying as a factual matter by direct evidence because it is rare that a plaintiff has a witness to the physical act of copying. Accordingly, a plaintiff may prove a defendant's copying by showing: (1) that the defendant had access to the plaintiff's copyrighted work; and (2) that the defendant's work is substantially similar to the plaintiff's copyrighted material. *See, e.g., Walker v. Time Life Films, Inc.,* 784 F.2d 44, 48 (2d Cir.1986).

■ Addressing the requirement of access, Plaintiffs allege in their Complaint that in August 1994, they submitted a draft copy of three issues of *Matchsticks* to defendant DC Comics. (Complaint ¶¶ 18–21). On a motion to dismiss, this is all Plaintiffs must do to establish *prima facie* proof that all the defendants named here, including the creators of *Dhampire,* had access to *Matchsticks* as well. *See Bevan v. Columbia Broadcasting Sys.,* 329 F.Supp. 601 (S.D.N.Y.1971) ("corporate receipt deemed '*prima facie*' proof of access" by defendant creator of "Hogan's Heroes" television show).

In addition to showing access, a plaintiff must also demonstrate substantial similarity in order to establish that a defendant copied.

However, the phrase "substantial similarity" has more than one meaning in the context of a copyright infringement action. As a proxy for evidence of actual copying, the phrase "substantial similarity" addresses whether the similarities would not be expected to have arisen independently in the two works and thus is probative of whether a defendant "copied." In other words, such similarity would negative a defendant's claim of independent creation. To illustrate, in *Selle v. Gibb*, 741 F.2d 896 (7th Cir.1984), the plaintiff claimed that the song "How Deep is Your Love," written and performed by the Bee Gees, was copied from plaintiff's song "Let it End." In affirming the district court's judgment notwithstanding the verdict, which had overturned the jury's verdict in favor of the plaintiff, the Seventh Circuit noted that even if the similarity is verbatim, this may not constitute sufficient similarity if that which is common between the two works is commonplace or at least sometimes found in other works. *Selle*, 741 F.2d at 903–904. In such circumstances the similarity between the two works may be explained by a common inspirational source or even by coincidental similarity.

In their Complaint, Plaintiffs allege the following similarities between the two works in question: (1) the protagonist in both works is named Nicholas Gaunt; (2) both protagonists are part human and part vampire; (3) both protagonists search to uncover their past; (4) both protagonists struggle with good and evil; (5) both protagonists have sinister genealogies; (6) in both works the protagonist's vampire father has killed his mother; (7) both works involve initiation into the vampire world through killing others; and (8) both protagonists develop a romantic relationship with a woman vampire. (*See* Complaint ¶¶ 13 & 24).

After reading *Matchsticks* and *Dhampire*, the Court does not find that Plaintiffs' asserted similarities are clearly contradicted by the works themselves. Although these similarities are arguably commonplace, or at least sometimes found in other works, *see Selle*, 741 F.2d at 904, on a motion to dismiss the facts must be liberally construed in the light most favorable to the plaintiff. *See*

*Easton*, 947 F.2d at 1014–15. Accordingly, Plaintiffs have met their *prima facie* burden of establishing that Defendants copied from *Matchsticks*.

The final prong of the infringement test requires that Plaintiffs prove that Defendants have copied a sufficient amount of Plaintiffs' work such that the two works are substantially similar and thus Defendants should be liable for the misappropriation. Generally, when courts discuss "substantial similarity," they are using the phrase in this context, rather than as a proxy for actual copying.

As other courts have noted, the determination of the extent of similarity that will constitute a substantial similarity—and hence an infringing similarity—presents one of the most difficult questions in copyright law. *See Warner Bros., Inc., v. American Broadcasting Companies, Inc.*, 654 F.2d 204 (2d Cir.1981). "Somewhere between the one extreme of no similarity and other of complete and literal similarity lies the line marking off the boundaries of 'substantial similarity.'" 3 NIMMER ON COPYRIGHT § 13.03[A]. As Judge Learned Hand has remarked, this line "wherever it is drawn will seem arbitrary." *Nichols v. Universal Pictures Co.*, 45 F.2d 119, 122 (2d Cir.1930).

Some courts have called this determination the "lay observer" test or "ordinary observer test." *See, e.g., Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157 (9th Cir.1977). Regardless of how the test is described, however, the determination is necessarily fact specific. Although a few courts have found on a motion to dismiss that the works in question were not substantially similar as matter of law, a court must be cautious of making that determination at such an early stage in the proceedings. For that reason copyright cases are rarely dismissed on a 12(b)(6) motion. *See, e.g., Great Am. Fun Corp. v. Hosung New York Trading, Inc.*, 935 F.Supp. 488, 489 (S.D.N.Y.1996) (the "question of substantial similarity should be reserved for the trier of fact—or at least the summary judgment stage"); *Cognotec Servs., Ltd. v. Morgan Guar. Trust Co. of New York*, 862 F.Supp. 45, 50 (S.D.N.Y.1994) ("A motion to dismiss

is not the proper procedural mechanisms to make this factual inquiry.").

Accordingly, after examining *Matchsticks* and *Dhampire,* the Court cannot conclude at this point that as a matter of law the two works are not substantially similar. Therefore, the Court must deny Defendants' motion to dismiss Plaintiffs' copyright infringement claim.

## III. CONCLUSION

In summary, Defendants' Motion for Reconsideration is GRANTED. However, because the Court finds, even after examining the underlying works, that Plaintiffs have stated a claim for copyright infringement, Defendants' Motion to Dismiss Plaintiffs' copyright cause of action is DENIED.

**IT IS SO ORDERED.**