**I.L.G.W.U. NATIONAL RETIREMENT FUND; Irwin Solomon and Joseph Moore and their successors as Trustees of the I.L.G.W.U. National Retirement Fund, Plaintiffs–Judgment Creditors,**

v.

**MEREDITH GREY, INC., ESI Group, Inc., f/k/a Michael Industries, Inc., Davend Corp., the LVI Group, Inc., f/k/a Lehigh Valley Industries, Inc., the Culinary Company, Inc., f/k/a the Casserole, Inc. and the Casserole of Arizona, Inc., Defendants–Judgment Debtors.**

No. 92 CIV. 0597(PKL).

United States District Court,
S.D. New York.

Dec. 8, 1997.

818

Broach & Stulberg, LLP, ( Jane Lauer Barker, of counsel), New York City, for Plaintiffs.

Ledy–Gurren & Blumenstock, LLP, (Nancy Ledy–Gurren, Deborah Bass, of counsel), New York City, for Defendants ESI Group, Inc., Davend Corp., The Culinary Company, Inc. and The Casserole of Arizona.

### *OPINION AND ORDER*

LEISURE, District Judge.

Defendants ESI Group, Inc. ("ESI"), Davend Corp. ("Davend"), The Culinary Company, Inc. ("Culinary"), and The Casserole of Arizona, Inc. ("Casserole") move to vacate a default judgment entered against them in favor of plaintiffs ILGWU National Retirement Fund and its trustees (the "Fund"). For the reasons stated below, defendants' motion is granted.

### BACKGROUND

The Fund maintains a defined benefit pension plan to provide retirement income to employees of employers who contribute to the Fund, which due to its nature is a multiemployer plan under the Employee Retire-

ment Security Act of 1974 ("ERISA"), 29 United States Code ("U.S.C.") §§ 1001 *et seq.* Marty Gutmacher, Inc. ("Gutmacher") was one of the employers required to contribute to the Fund on behalf of its employees.

The Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381 *et seq.* amended ERISA to require an employer who withdraws from a multiemployer defined benefit pension plan-to contribute "withdrawal liability" to the plan. This withdrawal liability represents that employer's proportionate share of the plan's unfunded vested benefits. Moreover, ERISA classifies all trades or businesses that are under "common control" as a single employer for purposes of withdrawal liability. *See* 29 U.S.C. § 1301(b)(1). Thus, each member of a commonly-controlled group of trades or businesses is liable for the withdrawal liability of any other member of that group.

In 1987, Gutmacher withdrew from the Fund. Plaintiffs allege that Gutmacher, ESI, Davend, Culinary and Casserole are part of a commonly controlled group of corporations and therefore are jointly and severally liable for Gutmacher's withdrawal liability. In 1992, plaintiffs initiated this action to obtain $2,057,682, the amount allegedly owed to the Fund because of Gutmacher's withdrawal.

Plaintiffs delivered two copies of the Summons and Complaint for each defendant to the New York Secretary of State. The Secretary of State mailed one copy of the Summons and Complaint to Davend and ESI, New York corporations, by certified mail, return receipt requested, at the addresses designated by Davend and ESI. Plaintiffs mailed an additional copy of the summons and complaint to Culinary and Casserole, unauthorized foreign corporations, at the addresses on file in their respective states of incorporation.[1]

None of the defendants answered the Complaint. On May 20, 1992, this Court entered a default judgment in favor of the plaintiffs in the amount of $4,270,811.99, which included interest, liquidated damages,

costs, and attorneys' fees. Upon learning of the default judgment, defendants retained the law firm of Silverberg, Stonehill & Goldsmith, P.C. to represent them. The parties then entered into negotiations and a series of stipulations extending the deadline for the filing of a motion to vacate the default judgment. The parties engaged in discovery, in the form of documents and depositions, concerning the organization of the corporations in question in an attempt to determine if these entities were commonly-controlled.

Despite this discovery, the parties are presently at an impasse as to whether these corporations are part of a controlled group. Accordingly, defendants now move to vacate the default judgment entered against them. Defendants claim that the judgment is void due to improper service of process and, additionally, they satisfy the criteria established by the Second Circuit for vacating default judgments.

## DISCUSSION

### I. *Void Final Judgment*

 Rule 60(b)(4) of the Federal Rules of Civil Procedure authorizes a court to grant a party relief from a void final judgment. A judgment obtained in the absence of *in personam* jurisdiction is void, and a court must vacate such a judgment. *See Jaffe and Asher v. Van Brunt,* 158 F.R.D. 278, 279 (S.D.N.Y.1994); *see also Kao Hwa Shipping Co., S.A. v. China Steel Corp.,* 816 F.Supp. 910, 913 (S.D.N.Y.1993). "Unlike motions pursuant to other subsections of 60(b), the Court has no discretion regarding motions to vacate void judgments under Rule 60(b)(4)." *Kao Hwa,* 816 F.Supp. at 913.

### A. *Waiver*

 As an initial matter, plaintiffs assert that because defendants participated in post-judgment discovery in this case, they have waived their jurisdictional objections. This contention is without merit and requires little discussion.

Following the entry of the default judgment, the parties entered into negotiations

---

**1.** Culinary is a California corporation and Cas- serole is an Arizona corporation.

designed to resolve the issue in lieu of litigating a motion to vacate. As the negotiations progressed, the parties entered into a series of stipulations extending the time period for defendants to move to vacate the judgment. During this period, defendants neither appeared before the Court nor submitted any pleadings or motions.

■ The United States Court of Appeals for the Second Circuit has held that waiver of objections to either personal jurisdiction or insufficiency of service of process may occur due to a party's conduct as well as due to the failure to raise the defense in motions or pleadings. *See Datskow v. Teledyne, Inc.*, 899 F.2d 1298, 1302–03 (2d Cir.1990). However, when determining whether a party has waived its jurisdictional objections, the court must focus its attention on "the nature and extent of defendants' contacts with the court." *Trustees of Central Laborers' Welfare Fund v. Lowery*, 924 F.2d 731, 733 (7th Cir.1991).

Defendants in this case have had minimal contacts with this Court. Defendants have not appeared before the Court for any conferences, nor have they submitted any previous motions or pleadings. While the defendants have exchanged information with plaintiffs, this has not occurred at the direction or supervision of the Court. In sum, the defendants' contacts with the Court are insufficient to constitute a waiver of their jurisdictional objections.

### B. Davend and ESI

■ Plaintiffs served defendants Davend and ESI, New York corporations, by delivering two copies of the summons and complaint for each defendant to the New York Secretary of State. The Secretary of State mailed one copy of the summons and complaint to Davend and ESI by certified mail, return receipt requested, to the addresses designated by them for that purpose.

Under the former Rule 4(d)(3) of the Federal Rules of Civil Procedure [2] a plaintiff may

effect service upon a domestic or foreign corporation:

> [B]y delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

Accordingly, when a plaintiff chooses to utilize service upon a statutory agent, such as the Secretary of State of New York, a court must look to the law of that state to determine if service was proper. In this case, if the service of Davend and ESI was improper under New York law, the Court lacks jurisdiction over the matter.

New York's Business Corporation Law ("BCL") governs service of process upon the Secretary of State as "agent of a domestic or authorized foreign corporation". N.Y. Bus. Corp. Law § 306 (McKinney 1996). Section 306(b) provides:

> (1) Service of process on the secretary of state as agent of a domestic or authorized corporation shall be made by personally delivering to and leaving with the secretary of state ... duplicate copies of such process .... Service of process on such corporation shall be complete when the secretary of state is so served.
> (2) An additional service of the summons may be made pursuant to paragraph four of subdivision (f) [3] of section thirty-two hundred fifteen of the civil practice law and rules.

N.Y. Bus. Corp. Law § 306 (McKinney 1996). Section 3215(g)(4)(I) of the CPLR states:

> When a default judgment based on non-appearance is sought against a domestic or authorized foreign corporation which has been served pursuant to paragraph (b) of section three hundred six of the business corporation law, an affidavit shall be submitted that an additional service of the summons by first class mail has been made

---

**2.** In the 1993 amendments to the Federal Rules of Civil Procedure, Rule 4(d)(3) was re-designated Rule 4(h)(1). The substance of the rule remained unchanged.

**3.** In 1993, the New York Legislature amended CPLR § 3215, and renumbered subdivision (f) as subdivision (g). The substance of the text remains the same.

upon the defendant corporation at its last known address at least twenty days before the entry of judgment.

N.Y. C.P.L.R. 3215(g) (McKinney 1996).

Davend and ESI argue that the interplay of these statutes required plaintiff to mail an additional copy of the summons to the defendants, and the failure to do so renders the service of process ineffective and the judgment void. This appears to be a case of first impression as to whether a party in a federal court must comply with the same requirements needed to obtain a default judgment in a New York State court. Defendants have offered no authorities which support their novel, yet clever, argument, and plaintiffs have offered no precedents to support their position. The Court's own search likewise has found nothing that speaks to this precise issue.

The true question presented by this scenario is whether the requirement of a second mailing under § 3215 is jurisdictional in nature, or whether it is a protective measure specific to the New York courts. If the former, then plaintiffs in this case failed to properly serve the defendants. If the latter, this Court properly exercised jurisdiction over the defendants. The Siegel Commentaries to § 3215 provide some insight into the purpose of the second mailing requirement:

> The 1990 amendment that added paragraph 4 to subdivision (f) of the CPLR 3215 was an attempt to increase the likelihood of the corporation's getting notice. It requires, apart from the BCL 306 methods, that yet another copy of the summons be mailed to the corporation, this one to go to the corporation's "last known address",
> . . . .
> A coordinate amendment, in fact, adding a paragraph (2) to BCL 306(b), merely provides that the additional mailing "may" be made, leaving the matter to the plaintiff. Should the defendant appear, the want of the additional mailing would play no role—it is apparently to have no "jurisdictional" function in that sense. But should the plaintiff want to take a default judgment, the additional CPLR 3215(f)(4) service would have to be shown.

Siegel Commentaries, C3215:19B (McKinney 1992).

The Court finds that the second mailing does not serve a jurisdictional purpose. The phrase "it is apparently to have no 'jurisdictional' function in that sense" applies to the entire provision of § 3215, although "in that sense" is somewhat redundant. More importantly, the context of the passage indicates that the requirements of § 3215 serve a protective, as opposed to a jurisdictional, purpose. The section is designed to provide notice to corporations, and to prevent unnecessary defaults.

As an illustration of this protective concept, if in a New York action X properly serves Y, a New York corporation, under BCL § 306(b), and Y fails to appear, X must make a second mailing to Y before the New York court will grant a default judgment to X. However, the New York court maintains jurisdiction over Y because X properly served Y. New York has chosen to mandate a second mailing before permitting entry of the default. This is permissible, because each state may adopt procedural rules for its own courts. Federal courts also incorporate protections designed to give notice to a party before the entry of a default judgment. This Court's Individual Rules, for example, strongly encourage parties to obtain a default judgment in the form of an Order to Show Cause, which serves the same protective function as the second mailing. *See* Individual Rules and Procedures of The Honorable Peter K. Leisure at 2.

The language of § 306 is also clear. "Service of process of such corporation shall be complete when the secretary of state is so served." N.Y. Bus. Corp. Law § 306(b)(1) (McKinney 1996). Section 306 does not require a second mailing to a party in order to properly serve that party. Thus, plaintiffs satisfied the requirements of Fed.R.Civ.P. 4 and properly served defendants Davend and ESI.

### C. *Culinary and Casserole*

■ Defendants Culinary and Casserole, foreign corporations not authorized to conduct business in New York, also argue that plaintiffs failed to properly serve process

upon them. The defendants are correct, and the judgment against them is void.

■ ERISA provides for nationwide service of process. Where Congress confers federal jurisdiction by a statute which provides for nationwide service of process, a defendant is subject to personal jurisdiction without regard to state long-arm statutes. *See Mariash v. Morrill,* 496 F.2d 1138, 1143 (2d Cir.1974). This is because defendant's "minimum contacts" with the United States would satisfy the Constitutional requirements of due process of law. *See id.*

■ Section 502(e)(2) of ERISA states:

Where an action under this title is brought in a District Court of the United States, it may be brought ... where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

29 U.S.C. § 1132(e)(2). Accordingly, any defendant residing in the United States is subject to an ERISA suit in any district in the United States. *See Hetchkop v. George Harms Excavating Corp.,* 1993 WL 88106, *2 (S.D.N.Y.) (Keenan, J.). The defendants, California and Arizona corporations, clearly have minimum contacts with the United States. Therefore, this Court theoretically could exercise jurisdiction over the defendants, even if neither had any contacts with New York.

■ However, a court may not exercise jurisdiction over a defendant unless the plaintiffs satisfy the procedural requirements of service of process. *See Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987). There is no dispute that neither Culinary nor Casserole "resides" in New York. Therefore, in order for plaintiffs' service upon the New York Secretary of State to be proper, plaintiffs must show that each defendant is "found" in New York. A party is "found" in any jurisdiction where that party satisfies the statutory and constitutional requirements of due process, independent of the nationwide service of process provision. *See Hetchkop,* 1993 WL 88106 at *2; *see also Varsic v. United States Dist. Court for the Cent. Dist.*

*of California,* 607 F.2d 245, 248 (9th Cir. 1979).

Since the ERISA statute does not prescribe the specific manner of service, *see Matesic v. Curtiss–Wright Corp.,* 128 F.R.D. 30, 31–32 (W.D.N.Y.1989), the Federal Rules define the proper method of service. Rule 4(e) provides:

Whenever a statute of the United States ... provides for service of a summons ... upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute ... or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule. Whenever a statute or rule of court of the state in which the district is held provides ... for service of a summons ... upon a party not an inhabitant of or found within the state, ... service may ... be made under the circumstances and in the manner prescribed in the statute or rule.

Fed.R.Civ.P. 4(e). Therefore, in an ERISA action, a party may effect service in a manner defined in Rule 4 or allowed under New York law. Under Rule 4(h)(1), a party may serve a corporation by delivering process "to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service, and the statute so requires, by also mailing a copy to the defendant." Fed.R.Civ.P. 4(h)(1).

Plaintiffs served the Secretary of State of New York, a statutory agent authorized under the BCL, with a copy of the summons and complaint for each defendant. As Culinary and Casserole are foreign corporations not authorized to conduct business in New York, section 307 of the BCL governs service on these defendants. Section 307(a) provides:

In any case in which a non-domiciliary would be subject to the personal or other jurisdiction of the courts of this state under article three of the civil practice law and rules, a foreign corporation not authorized to do business in this state is subject to a like jurisdiction. In any such case, process against such foreign corporation

may be served upon the secretary of state as its agent.

N.Y. Bus. Corp. Law § 307(a) (McKinney 1992).

■ This method of service requires as a threshold matter that the corporation be subject to jurisdiction under article three of the CPLR. The only portion of article three that conceivably could apply in this situation is CPLR § 302, New York's long-arm statute. In order for a court to subject a non-domiciliary defendant to a court's long-arm jurisdiction, a defendant must engage in purposeful transactions within the state and there must be a substantial relationship between the transactions and the claim asserted. *See Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 522 N.E.2d 40, 43 (1988); *see also McGowan v. Smith*, 52 N.Y.2d 268, 437 N.Y.S.2d 643, 419 N.E.2d 321, 323 (1981); *Lancaster v. Zufle*, 165 F.R.D. 38, 40 (S.D.N.Y.1996). Additionally, there must be "minimum contacts" with New York sufficient to satisfy the constitutional requirements of due process, as set forth in *International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), and its progeny.

The parties here make no argument that Culinary and Casserole conducted any business in New York. Thus, there do not exist sufficient contacts to establish personal jurisdiction over either defendant for purposes of serving process on the Secretary of State under BCL § 307. Despite the provision in ERISA allowing for nationwide service of process, plaintiffs did not satisfy the statutory and constitutional requirements for service of that process. Culinary and Casserole therefore are not "found" in New York; the judgments against them are void.

## II. *Vacatur of Default Judgment Under Rule 60(b)(1)*

■ Defendants argue that they satisfy the criteria established by the Second Circuit for vacating default judgments. Since the Court determines, *supra*, that the judgments against Culinary and Casserole are void, the Court will consider only the motions of Davend and ESI made under Rule 60(b)(1).

### A. *Standard for Vacatur*

Fed.R.Civ.P. 55(c) provides that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Rule 60(b)(1) allows the court to grant relief from a final judgment in the case of "mistake, inadvertence, surprise or excusable neglect". Fed.R.Civ.P. 60(b)(1).

■ Motions to vacate default judgments "are left to the sound discretion of the district court, because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). The Second Circuit has established a three-part test to guide the exercise of that discretion. The court must consider (1) whether the default was willful, (2) whether setting aside the default would prejudice the plaintiff, and (3) whether the defendant has presented a meritorious defense to the action. *Id.* at 96. The court must consider all of these factors. *See Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 243 (2d Cir.1994). Moreover, the district court should apply these factors liberally, and resolve any doubts in favor of the defending party. *See Enron*, 10 F.3d at 96.

### B. *Willful Conduct*

■ The first factor inquires whether the defendant was culpable in the entry of the default (*i.e.*, whether he willfully refused to respond to the complaint). This factor is relevant but not dispositive; "[e]ven when defendant's conduct may be considered 'willful,' a default judgment against him may be vacated if he presents valid defenses and plaintiff would not be prejudiced if the default judgment was vacated." *Wagstaff–El v. Carlton Press Co.*, 913 F.2d 56, 57 (2d Cir. 1990).

In this case, the defaults of Davend and ESI do not appear to be willful. In fact, the plaintiffs do not argue the point. Although plaintiffs satisfied all requirements of service of process to Davend and ESI, New York corporations, the companies claim that they

did·not receive notice of the action. As soon as Jeffrey Endervelt, an executive with the corporations involved, learned that plaintiffs commenced an action and obtained a default, he retained counsel on behalf of the corporations for the purpose of contesting the default. While this factor is not dispositive, it does not appear that Davend and ESI willfully defaulted.

### C. *Prejudice to the Nondefaulting Party*

In determining whether plaintiff would be prejudiced by the granting of the motion to vacate the default judgment, "delay alone is not a sufficient basis for establishing prejudice .... Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunities for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir.1983).

The plaintiffs do not argue that they will suffer any prejudice as a result of the vacatur of the default judgment. The parties have engaged in discovery throughout the period from the entry of the default until the filing of this motion. Because of the substantial nature of this discovery, plus the availability of relevant witnesses and documents, vacatur of the default judgment against Davend and ESI will not prejudice plaintiffs.

### D. *Meritorious Defense*

To show that a defense has merit, and thereby to meet the third part of the test, a defendant seeking to vacate a default judgment "need not conclusively establish the validity of the defense(s) asserted, but must make some showing of their existence other than mere allegations." *Tecnart Industria E Comercio Ltda. v. Nova Fasteners Co.*, 107 F.R.D. 283, 285 (E.D.N.Y.1985) (citing *Davis*, 713 F.2d at 916). Conclusory statements do not suffice; "the moving party ... must support its general denials with some underlying facts." *Sony Corp. v. Elm State Electronics, Inc.*, 800 F.2d 317, 320 (2d Cir.1986). A defendant must "articulate a defense with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings and

raises a serious question as to the validity of those allegations." *Salomon v. 1498 Third Realty Corp.*, 148 F.R.D. 127, 130 (S.D.N.Y. 1993).

Defendants contend that their "meritorious defense" is that they were not part of a group under "common control" and thus were not subject to the withdrawal liability incurred by Gutmacher. To prove this point, defendants offer the affidavit of David M. Stern, Esq., a tax attorney and certified public accountant. Mr. Stern states that in his expert opinion, Gutmacher, Davend, and ESI were not under common control at the time of Gutmacher's withdrawal from the Fund. While the plaintiffs dispute this claim, they offer nothing to contradict to the findings of Mr. Stern. Their arguments are not persuasive in the context of this motion. In deciding a motion to vacate a default judgment, a court does not pass judgment on the merits of the defense. The court only determines if the defense is supported by more than mere allegations and raises serious questions as to the validity of the claim. The thorough analysis of Mr. Stern certainly raises an issue as to whether Davend and ESI properly are classified as an "employer" for purposes of ERISA.

The true issue in dispute is whether the Court may determine the status of Davend and ESI as employers, or whether this is an issue upon which an arbitrator must decide. If the latter, the defendants' failure to demand arbitration means that they have effectively waived a potentially meritorious defense. In that case, the Court would decline to set aside the default judgment.

The MPPAA requires an employer who is obligated to contribute to a multiemployer pension plan to pay its proportionate share of the plan's unfunded vested benefits upon withdrawal from the plan. *See* 29 U.S.C. § 1381(a). ERISA requires that all trades or businesses that are under "common control," as defined in regulations issued by the Pension Benefit Guaranty Corporation, "shall be treated ... as a single employer." 29 U.S.C. § 1301(b)(1). If these entities are under common control, each member of the

group is liable for the withdrawal of any other member of the group.

The MPPAA grants broad authority to pension plan sponsors to collect withdrawal liability. Provisions for the quick and informal resolution of withdrawal liability disputes are an integral part of the statutory scheme. Once the plan notifies an employer of liability, the employer has ninety days to ask the plan to reconsider the alleged liability. *See* 29 U.S.C. § 1399(b)(1)(B). Either party then may initiate arbitration, but if neither party demands arbitration, the amounts demanded become "due and owing on the schedule set forth by the plan sponsor". 29 U.S.C. §§ 1401(a)(1), 1401(b)(1).

The issue whether Davend and ESI were "employers" within the meaning of the MPPAA is an issue for the courts, and not an arbitrator, to decide. *See Bowers v. Transportacion Maritima Mexicana, S.A.,* 901 F.2d 258, 261 (2d Cir.1990); *see also Korea Shipping Corp. v. New York Shipping Ass'n–Int'l Longshoremen's Ass'n Pension Trust Fund,* 880 F.2d 1531, 1536 (2d Cir.1989); *Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc. v. Canny,* 900 F.Supp. 583, 590 (N.D.N.Y.1995). The MPPAA prescribes arbitration for disputes "between an employer and the plan sponsor." 29 U.S.C. § 1401(a)(1). Thus, the MPPAA does not preclude judicial resolution of the threshold legal issue whether Davend and ESI are employers within the meaning of the statute. *See Bowers,* 901 F.2d at 261; *see also Canny,* 900 F.Supp. at 590.

The *Canny* court developed an interesting example to demonstrate the respective roles of the courts and arbitrators in these cases: "[T]he Court notes the difference between the statutory issue of whether defendants were ever a MPPAA employer and the factual issue of whether defendants had ceased to be an MPPAA employer before the date of withdrawal. The former is a question for the Court to decide in this case, while the latter is relegated to an arbitrator's jurisdiction." *Canny,* 900 F.Supp. at 590. This example shows that unlike the issue of whether an entity is an employer within the meaning of the MPPAA, "any dispute" concerning the notice or amount of withdrawal liability "shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1); *see also Bowers,* 901 F.2d at 261. Therefore, this Court properly may determine the status of Davend and ESI as employers within the MPPAA. However, all issues of fact concerning notice or the amount of liability are for an arbitrator.

### E. *Evaluation of the Three–Part Test*

The three factors analyzed in deciding a motion to vacate a default judgment under Fed.R.Civ.P. 60(b)(1) all weigh in favor of defendants Davend and ESI. Accordingly, this Court vacates the judgment against them.

### CONCLUSION

For the reasons stated above, the defendants' motion to vacate the default judgment is HEREBY GRANTED. The parties are directed to appear at a pre-trial conference in Courtroom 18B at 500 Pearl Street on January 9, 1998 at 11:30 a.m.

**SO ORDERED.**