I.L.G.W.U. NATIONAL RETIREMENT FUND; Irwin Solomon and Joseph Moore and their successors as Trustees of the I.L.G.W.U. National Retirement Fund, Plaintiffs,

v.

MEREDITH GREY, INC.; ESI Group, Inc., f/k/a Michael Industries, Inc.; Davend Corp.; the LVI Group, Inc., f/k/a Lehigh Valley Industries, Inc.; the Culinary Company, Inc., f/k/a the Casserole, Inc.; and the Casserole of Arizona, Inc., Defendants.

No. 92 CIV. 0597(PKL).

United States District Court, S.D. New York.

Dec. 3, 1999.

Broach & Stulberg, LLP, New York City, Robert B. Stulberg, Joshua S.C. Parkhurst, of counsel, for Plaintiffs.

Ledy–Gurren & Blumenstock, L.L.P., New York City, Nancy Ledy–Gurren, Deborah Bass, of counsel, for Defendants Davend Corp. and ESI Group, Inc.

## OPINION AND ORDER

LEISURE, District Judge.

On December 8, 1997, this Court issued an Order vacating default judgments entered on May 20, 1992 against defendants ESI Group, Inc. ("ESI") and Davend Corp. ("Davend"), and declaring void and thus dismissing default judgments against defendants The Culinary Company, Inc. ("Culinary") and The Casserole of Arizona, Inc. ("Casserole"). Plaintiffs I.L.G.W.U. National Retirement Fund (the "Fund") and its trustees now move, pursuant to Fed.R.Civ.P. 15(a), to amend their Complaint to address various representations by defendants concerning the underlying dispute that were not discovered by plaintiffs until post-judgment discovery. For the following reasons, plaintiffs' motion is granted.

## BACKGROUND

The facts of the underlying dispute have been set forth in greater detail in *I.L.G.W.U. Nat'l Retirement Fund v. Meredith Grey, Inc.*, 986 F.Supp. 816, 818–19 (S.D.N.Y.1997), with which the Court assumes familiarity.

The Fund maintains a defined benefit pension plan to provide retirement income to employees of employers who contribute to the Fund, which is a multiemployer plan under the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq. See id.* at 818–19. Marty Gutmacher, Inc. ("Gutmacher") was one of the employers required to contribute to the Fund on behalf of its employees. In 1987, Gutmacher withdrew from the Fund. *See id.* at 819. Plaintiffs contend that Gutmacher and the defendants are part of a commonly-controlled group of corporations and therefore are jointly and severally liable for Gutmacher's withdrawal liability. *See* Complaint at ¶¶ 26–29.

In 1992, plaintiffs initiated this action seeking $2,057,682, the amount allegedly owed to the Fund on account of Gutmacher's withdrawal.[1] None of the defendants answered the Complaint. On May 20, 1992, this Court entered default judgments in favor of the plaintiffs in the amount of $4,270,811.99, which included interest, liquidated damages, costs, and attorneys' fees. After defendants realized the default judgments had been entered, the parties entered into negotiations and a series of stipulations extending the deadline for the filing of a motion to vacate the default judgments in order to provide defendants with an opportunity to supply plaintiffs with additional information to support defendants' contention that they were not under common control with Gutmacher.

*See* Stulberg Decl. at ¶ 13; Ledy–Gurren Aff. at ¶ 6. The parties engaged in discovery, in the form of documents and depositions, concerning the organization of the corporations in question, in an attempt to determine whether these entities were under common control. *See I.L.G.W.U.*, 986 F.Supp. at 819; *see also* Stulberg Decl. at ¶ 14.

During discovery, it was learned that on March 28, 1986, defendant ESI (then known as Michael Industries, Inc.) had transferred a 25% interest in Gutmacher to Dan Erica Enterprises, Inc. Plaintiffs anticipate that defendants will argue that, as a consequence of this alleged transfer, defendants were not part of a "control group" with Gutmacher.[2] *See* Pl. Rep. Mem. at 9. Plaintiffs first became aware of this alleged transfer upon receipt of a letter from defendants' counsel and the enclosures thereto dated January 26, 1993. *See* Stulberg Decl., Exh. E.

Thereafter, on December 12, 1996, defendants filed a motion to vacate the default judgments. In their memorandum of law in opposition to defendants' motion to vacate, plaintiffs asserted that the purported transaction should be disregarded because it was undertaken for the primary purpose of "evading and avoiding" withdrawal liability. *See* Pl. Opp. Mem. at 17. Plaintiffs also argued that defendants' failure to arbitrate the factual issue of whether the transaction severed the control group precludes them from now asserting such a claim. *See id.* at 10–21; Pl. Surrep. Mem. at 2–10. In an Opinion and Order dated December 8, 1997, the Court granted defendants' motion, setting aside the default judgments against defendants Davend and ESI, and dismissing the action as void with respect to defendants Culinary and Casserole. *See I.L.G.W.U.*, 986

---

**1.** "The Multiemployer Pension Plan Amendments Act of 1980 ('MPPAA'), 29 U.S.C. §§ 1381 *et seq.*, amended ERISA to require an employer who withdraws from a multiemployer defined benefit pension plan to contribute 'withdrawal liability' to the plan. This withdrawal liability represents that employer's proportionate share of the plan's unfunded vested benefits. Moreover, ERISA classifies all trades or businesses that are under 'common control' as a single employer for purposes of withdrawal liability. *See* 29 U.S.C. § 1301(b)(1). Thus, each member of a commonly-controlled group of trades or businesses is

liable for the withdrawal liability of any other member of that group." *I.L.G.W.U.*, 986 F.Supp. at 819.

**2.** Defendants maintain that they have always taken the position that there was *never* any "control group" involving Gutmacher and defendants. *See* Ledy–Gurren Aff. at ¶ 8. In other words, their defense need not rely on the March 28, 1986 stock transfer to avoid withdrawal liability because there never was a "control group" to begin with.

F.Supp. at 825. The Court subsequently denied motions by both plaintiffs and defendants to certify an interlocutory appeal. *See* Mem. Order, dated May 5, 1998.

At a June 5, 1998 pretrial conference, plaintiffs' counsel informed the Court and defendants' counsel that plaintiffs intended to move to amend their Complaint. *See* Stulberg Decl. at ¶ 20. On October 16, 1998, plaintiffs brought the instant motion, seeking to amend the Complaint in three respects. First, the proposed amended complaint deletes from the caption defendants Grey and LVI, against whom default judgments are still entered, and defendants Culinary and Casserole, as to whom the action has been dismissed. Second, the amendment would change the caption to replace plaintiffs Irwin Solomon and Joseph Moore, former trustees of the Fund, with the current trustees, Edgar Romney and Eli Elias.[3]

Finally, and most controversially, the proposed amended complaint adds two additional claims. Plaintiffs' first claim for relief remains identical to its claim in the original Complaint. *See* Stulberg Dec., Exh. A at ¶¶ 53–56; Complaint at ¶¶ 26–29. Plaintiffs' second claim, however, asserts that if any "control group" of Gutmacher and defendants was severed prior to Gutmacher's withdrawal by the March 28, 1986 transaction, the transaction must be disregarded for the purpose of assessing withdrawal liability because it was effectuated with the primary purpose of "evading or avoiding" the payment of withdrawal liability, within the meaning of 29 U.S.C. § 1392(c). *See* Stulberg Dec., Exh. A, at ¶¶ 57–63. Plaintiffs' third and final claim advances the theory that because defendants failed to timely demand arbitration on the factual issue of whether the March 28, 1986 transaction severed the "control group" prior to Gutmacher's withdrawal, pursuant to 29 U.S.C. § 1401, defendants cannot now raise the issue as a defense in this action. *See id.* ¶¶ 64–68.

## DISCUSSION

Federal Rule of Civil Procedure 15(a) allows a party to amend a pleading "by leave of the court." The Rule provides that leave to amend "shall be freely given when justice so requires." *Id.* "Nonetheless, a motion to amend may be denied due to undue delay or if it would cause undue prejudice to the opposing party." *Ashjari v. Nynex Corp.*, No. 98–9411, 182 F.3d 898, 1999 WL 464977, at *1 (2nd Cir. June 22, 1999). In addition, leave to amend may also be denied within the discretion of the district court where the proposed amendment would be futile. *See Marchi v. Board of Coop. Educ. Servs.*, 173 F.3d 469, 477 (2d Cir.1999). *See also Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' "). Defendants Davend and ESI oppose the motion, maintaining first that the proposed additional claims are time-barred and thus any amendment would be futile; and second, that allowing the amendments would cause defendants undue prejudice.

## I. Futility

Defendants contend that amending the Complaint to include the Fund's new claims, which are premised on a theory of "evade or avoid" liability, would be futile because such claims are time-barred. Under the federal statute, an action for withdrawal liability may not be brought after the later of "6 years after the date on which the cause of action arose" or "3 years after the earliest date on which the plaintiff acquired or should have acquired actual knowledge of the existence of such cause of action." 29 U.S.C. § 1451(f). Defendants maintain that under either limitations period, plaintiffs' proposed claims are untimely.

In *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp.*, 522

---

**3.** Defendants Davend and ESI do not oppose these amendments. Defendants' opposition is limited to plaintiffs' efforts to assert additional causes of action. *See* Ledy–Gurren Aff. at 1.

U.S. 192, 118 S.Ct. 542, 549, 139 L.Ed.2d 553 (1997), the Supreme Court determined that the six-year limitations period on a fund's action to collect unpaid withdrawal liability commences when the employer fails to make an installment due and payable under the schedule set by the fund's trustees. Moreover, if the trustees, upon the default, elect to accelerate payment, a claim for the entire unpaid amount accrues on the date of acceleration. *See id.* at 552 & n. 5.

Under these rules of accrual, it would appear that a proposed new claim of withdrawal liability would normally be time-barred based on section 1451(f). As per the schedule set by the trustees, Gutmacher was to begin making payments on April 30, 1987. *See* Ledy–Gurren Aff., Exh. 2, at 1. However, no payments were made pursuant to the schedule, and on July 16, 1987, the Fund filed a proof of claim in the Gutmacher bankruptcy proceedings, thereby accelerating all payments and demanding the entire amount of the withdrawal liability. Under *Bay Area Laundry*, the statute of limitations began to run on the full amount of the withdrawal liability upon the acceleration of the debt. *See Bay Area Laundry*, 118 S.Ct. at 552 & n. 5. Accordingly, the relevant limitations period expired on July 16, 1993—six years after the acceleration.

Alternatively, application of the "three years from discovery" limitations period would also render such a claim time-barred. Plaintiffs aver that they first discovered the existence of the March 28, 1986 transaction upon receiving defendants' counsel's January 26, 1993 letter and the accompanying documents. *See* Stulberg Decl., Exh. E. Under this rule, plaintiffs would have had to make such a claim within three years of receiving the letter, *i.e.*, by January 1996.

Plaintiffs assert, however, that their proposed new claims "relate back" to the original Complaint, pursuant to Fed. R.Civ.P. 15(c)(2). Under Rule 15(c)(2), an amendment relates back to the date of the original pleading when "the claim ... asserted in the amended pleading arose out of the

conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." The Second Circuit has held that this Rule shall be "liberally construed." *Mackensworth v. S.S. Am. Merchant*, 28 F.3d 246, 251 (2d Cir.1994). Moreover, "[p]rovided the amended pleading is based on the same series of transactions and occurrences alleged in the original pleading, the revised pleading will relate back to the original pleading, even where the revised pleading contains legal theories not included in the original." *White v. White Rose Food*, 128 F.3d 110, 116 (2d Cir.1997).

Plaintiffs argue that the new contentions in the proposed amended complaint relate back to the original claims because they are "based on the same series of and occurrences alleged in the original pleading, namely the interrelationship of [Gutmacher] and the corporate defendants asserted to be under common control with it." Pl. Rep. Mem. at 4. The Court agrees. While the original Complaint does not mention the "evade or avoid" provisions of ERISA, 29 U.S.C. § 1392(c), defendants have long been on notice of plaintiffs' central claim: that defendants were members of a "control group" with Gutmacher and were therefore liable its withdrawal liability. *See* Complaint at ¶¶ 26–29.

Plaintiffs' new contentions are based on "the general fact situation alleged in the original pleading," namely, that the defendants were at all relevant times under common control with Gutmacher. *Union Carbide Corp. v. Montell N.V.*, 944 F.Supp. 1119, 1140 (S.D.N.Y.1996). Liability still arises from the allegation of "common control," pursuant to 29 U.S.C. § 1301(b)(1), and the failure to make the requisite payments upon withdrawal, per 29 U.S.C. § 1451(b). The "evade or avoid" provision, 29 U.S.C. § 1392(c), does not, in and of itself, create a cause of action.[4] Plaintiffs simply allege that the purported March 28, 1986 transaction must be disregarded for the purposes of establishing liability under sections 1301(b)(1) and 1451(b), pursuant to their original claim. Hence, the addition of this

---

**4.** Section 1392(c) provides: "If a principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected) without regard to such transaction."

"evade or avoid" claim relates back to the original pleading because, although it asserts a novel legal theory, it is still based on the same series of transactions and occurrences under which the original claim arose. *See White*, 128 F.3d at 116. To the extent any new factual allegations are raised, those allegations "simply 'amplify the facts alleged in the original pleading or set forth those facts with greater specificity.'" *In re Chaus Securities Litig.*, 801 F.Supp. 1257, 1264 (S.D.N.Y.1992) (quoting *Oliner v. McBride's Indus., Inc.*, 106 F.R.D. 9, 12 (S.D.N.Y. 1985)). Accordingly, the amendments shall be deemed to "relate back" to the original Complaint and thus are not, for the purposes of Rule 15(c), "futile."

Furthermore, the Court notes that even if the proposed amended claims were not deemed to relate back to the original Complaint, the six-year statute of limitations may be tolled during the pendency of the default judgments. Plaintiffs correctly observe that they would not have been permitted to amend their Complaint prior to the Court's December 8, 1997 decision to vacate the default judgments. *See National Petrochem, Co. v. M/T Stolt Sheaf,* 930 F.2d 240, 244 (2d Cir.1991) (" '[O]nce judgment is entered the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to Fed.R.Civ.P. 59(e) or 60(b).'") (quoting *Cooper v. Shumway,* 780 F.2d 27, 29 (10th Cir.1985)). After the judgments were vacated, and following the Court's denial of the parties' cross-motions to certify different portions of the Court's Order for interlocutory appeal, plaintiffs promptly notified the Court and the defendants that they intended to move to amend the Complaint. *See* Stulberg Dec. at ¶ 20.

■ The Court finds that commencement of an ERISA action in compliance with 29 U.S.C. § 1451(f) is sufficient to toll the statute of limitations during the pendency of a default judgment. On this issue, *United States v. Wahl,* 583 F.2d 285 (6th Cir.1978), is instructive. In *Wahl,* the Government filed its original complaint on May 22, 1970, almost four years after the six-year statute of limitations began to run on July 18, 1966. *See id.* at 286. None of the defendants appeared, and on August 3, 1970, the Government was awarded a default judgment. *See id.* at 287. On August 26, 1975, the district court vacated the default judgment and declared it void for lack of personal jurisdiction, due to improper service of process. *See id.* Consequently, the Government filed an amended complaint on October 3, 1975. However, one of the defendants moved for summary judgment on the grounds that the statute of limitations had run and the suit was therefore time-barred. *See id.* The Sixth Circuit held that, "for limitations purposes, a civil action is commenced upon the filing of a complaint and 'remains pending in an inchoate state until service is completed unless and until an action is dismissed for failure to prosecute.'" *Id.* at 289 (quoting *Messenger v. United States,* 231 F.2d 328, 329 (2d Cir.1956)). Therefore, because the filing of the action tolled the limitations period during the pendency of the default judgment, notwithstanding the defective service of process and the resulting order to vacate the judgment, the court held that the action was not time-barred. *See id.*

The instant action is, for all relevant purposes, indistinguishable from *Wahl.* Plaintiffs filed the original Complaint in 1992, well within the six-year statute of limitations. The default judgments were entered soon after. During the pendency of the default judgments, however, plaintiffs could not amend their Complaint. *See National Petrochem. Co.,* 930 F.2d at 244. Nor could they bring a new action after the entry of the default judgments, for such a case would have been necessarily based on the same facts underlying the judgments and thus barred by principles of *res judicata. See Berlitz Sch. of Languages v. Everest House,* 619 F.2d 211, 215 (2d Cir.1980) ("[W]hen the factual predicate upon which claims are based are substantially identical, the claims are deemed to be duplicative for purposes of *res judicata.*"); *see also Woods v. Dunlop Tire Corp.,* 972 F.2d 36, 39 (2d Cir.1992); *Saud v. Bank of New York,* 929 F.2d 916, 919 (2d Cir.1991). Finally, from 1992 to 1996, the parties repeatedly stipulated to extend defendants' time to vacate the default judgments in order to provide defendants with time to produce documentation in support of

their contention that Gutmacher and defendants were not under "common control." Stulberg Decl. at ¶ 13–14. Having requested the delay to help relieve them from the default judgments, defendants may not now invoke the statute of limitations to the detriment of plaintiffs, who continually stipulated to defendants' extension requests. *Cf. Buttry v. General Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir.1995) ("The doctrine of equitable estoppel works to prevent a defendant from asserting the statute of limitations as a defense only where 'the plaintiff knew of the existence of a cause of action but the defendant's conduct caused the plaintiff to delay the bringing of a lawsuit.'"). Because plaintiffs had no way to effectively raise these issues prior to the Order vacating the judgments, the statute may be deemed tolled during the period in which the default judgments were in effect, up until May 5, 1998, the date upon which the Court denied both parties' motions to certify an interlocutory appeal.

In sum, plaintiffs' new proposed claims are not time-barred and should therefore not be considered futile.

## II. Prejudice

■ In determining whether to grant leave to amend, the Court is "'required to take into account any prejudice' that might result to the party opposing the amendment." *Ansam Assocs., Inc. v. Cola Petro., Ltd.*, 760 F.2d 442, 446 (2d Cir.1985) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–31, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971)). Defendants maintain that they will suffer prejudice if plaintiffs are allowed to amend their Complaint because plaintiffs' third claim will preclude defendants from contesting liability due to defendants' failure to arbitrate the issue of "common control" and would thereby deprive defendants of a meaningful opportunity to contest plaintiffs' allegations. *See* Def. Opp. Mem. at 11–12.

However, the Court finds no such prejudice. Defendants have been aware of this issue since their counsel implied that the transfer was a defense to liability in his January 26, 1993 letter, if not since the March 28, 1986 transaction itself. *See* Stulberg Decl., Exh. A, ¶ 66. In fact, it was defendants' counsel who first raised the issue in his January 26, 1993 letter. Moreover, plaintiffs have previously raised all three claims in their submissions to the Court opposing defendants' motion to vacate the default judgments, *see* Ledy–Gurren Aff., Exh. 23, at 17 (Pl.Opp.Mem.); *id.*, Exh. 25, at ¶ 11 (Barker Aff.), as well as in their papers supporting their motion to certify an interlocutory appeal. Consequently, defendants have been aware of these claims for at least six years. Having had notice of these issues all along, defendants' current position is a result of their own inaction. *See NYSA–ILA Pension Trust Fund v. Pouch Terminal, Inc.*, No. 89 Civ. 6042, 1990 WL 55713, at *4 (S.D.N.Y. Apr. 24, 1990) (Leisure, J.); *see also IUE AFL–CIO Pension Fund v. Barker & Williamson, Inc.*, 788 F.2d 118, 129 (3d Cir.1986) (holding that an employer's failure to request arbitration was "inaction [that] should not now be rewarded" and that because such an employer "gambles that it will not later be found to be a member of a controlled group with the withdrawn employer" and therefore "risks losing the possibility of review and arbitration and risks default," any resulting consequence, "though seemingly harsh, is but a self-inflicted wound"). To the extent defendants may rely on the transaction as a defense to liability, plaintiffs have a right to address the matter in their Complaint. Indeed, plaintiffs would be unduly prejudiced were they not allowed to raise these issues to attack defendants' contentions regarding the purported transaction.

Defendants further imply that allowing these amendments will effectively reverse this Court's decision vacating the default judgments against defendants ESI and Davend. *See* Def. Opp. Mem. at 11–12; Ledy–Gurren Aff. at ¶ 26. Nothing could be further from the truth. If, as defendants maintain, there was *never* a "control group" involving Gutmacher and defendants—even prior to the March 28, 1986 transaction—then, for the purposes of this litigation, the transaction will be irrelevant. Defendants' failure to arbitrate the issue of the March 28, 1986 transaction cannot, in and of itself, have

the effect of imposing liability, since liability remains predicated on their status as members of a "control group."

Finally, defendants request that the Court, having permitted the amendment, deem the time to demand arbitration on this issue to commence as of the date of service of the amended complaint. Defendants may be correct in suggesting that the interjection of new theories of liability activates a new sixty-day period during which an employer may demand arbitration of newly-addressed legal issues.[5] However, in the absence of a complete record, the Court declines to make such a finding at this time. Rather, the amendments will allow the parties the opportunity to litigate this question, as well as any other issues raised by the amended complaint, fully and fairly in subsequent proceedings before this Court.

## CONCLUSION

For the reasons stated above, plaintiffs' motion to amend their Complaint is HEREBY GRANTED. The parties are directed to appear at a pre-trial conference in Courtroom 18B at 500 Pearl Street on December 17, 1999, at 10:30 a.m.

**SO ORDERED.**

---

5. Under 29 U.S.C. § 1401(a)(1)(A), a party must initiate arbitration within sixty days of "the date of notification to the employer under [29 U.S.C. §] 1399(b)(2)(B)." Section 1399(b)(2)(B) provides that "[a]fter a reasonable review of any matter raised, the plan sponsor shall notify the employer of (i) the plan sponsor's decision, (ii) the basis for the decision, and (iii) the reason for any change in the determination of the employer's liability or schedule of liability payments." A complaint is generally deemed sufficient "notification" to begin the sixty-day period to demand arbitration per section 1401(a)(1)(A). *See, e.g., Bowers v. Transportacion Maritima Mexicana, S.A.,* 901 F.2d 258, 263 (2d Cir.1990); *Board of Trustees of Trucking Employees v. Canny,* 900

F.Supp. 583, 593 (N.D.N.Y.1995). In this case, however, by raising the issue of "evade or avoid" liability, the amendments to the Complaint may effectively constitute a "change in the determination of the employer's liability" under section 1399(B)(2)(B)(iii). *Cf. A. Soloff & Son, Inc. v. Trustees of the Amalgamated Cotton Garment & Allied Indus. Fund,* 583 F.Supp. 1098, 1100–01 (S.D.N.Y.1984) (holding that a fund's revised notification of its calculation of an employer's liability "triggers the running of time under § 1401(a)(1)(A)"). Accordingly, by introducing a new theory of liability, plaintiffs may have restarted defendants' time to demand arbitration on factual issues raised for the first time in the amended complaint.